IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: )<br><br>COMBUSTION ENGINEERING, INC., )<br><br>Debtor. ) | Chapter 11<br><br>Case No. 03-10495 (JKF) |

| | |
|---|---|
| )<br>VICTOR TRINCHESE, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>COMBUSTION ENGINEERING, )<br>INC., HASBROUCK HAYNES, JR. CPA )<br>as Regular Trustee of the CE Settlement )<br>Trust dated November 22, 2002, )<br>WILMINGTON TRUST COMPANY, a )<br>Delaware Banking Corporation, as the )<br>Delaware Trustee of the CE Settlement )<br>Trust dated November 22, 2002, JOSEPH )<br>F. Rice, Claimant Representative, THE )<br>CE SETTLEMENT TRUST )<br>dated November 22, 2002, and JOHN AND )<br>JANE DOES Nos. 1-75,000 (being )<br>unknown persons and/or entities to whom )<br>payment was made from the Trust and )<br>those unknown persons and entities for )<br>whose benefit such payments were made )<br>within ninety (90) days prior to Debtor's )<br>bankruptcy petition), )<br> )<br>Defendants ) | Adv. No. 03-50995 (JKF)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Hearing: January 27, 2005 at 1 p.m. in Pittsburgh, PA**<br>**Objection Deadline: January 18, 2005 at 4:00 p.m. Eastern Time** |

**PLAN PROPONENTS' MOTION TO APPOINT DAVID AUSTERN AS PARTY IN
INTEREST AUTHORIZED TO PURSUE AVOIDANCE ACTIONS
ON BEHALF OF THE BANKRUPTCY ESTATE**

Combustion Engineering, Inc., the above-captioned debtor and debtor-in-

possession ("CE"), by and through its undersigned counsel, along with the other proponents of

CE's proposed Plan of Reorganization (collectively, the "Plan Proponents"), hereby submit this Motion for entry of an order authorizing Mr. David Austern ("Mr. Austern"), the Future Claimants' Representative[1] in the above-captioned proceeding, to bring any and all avoidance actions in CE's Bankruptcy Case on behalf of the Bankruptcy Estate and to substitute Mr. Austern as the party plaintiff in the Adversary Proceeding (as such term is defined below).[2]  The deadline to bring avoidance actions is February 17, 2005.  As a result, the Plan Proponents respectfully request that this Court consider this Motion on an expedited basis.

## PRELIMINARY STATEMENT

1.      On February 27, 2003, ten days following the Petition Date, the Select Asbestos Claimants (the "SAC") and Mr. Victor Trinchese ("Mr. Trinchese" or "Plaintiff") initiated an adversary proceeding (the "Adversary Proceeding") seeking Court authority to bring avoidance actions on behalf of the Bankruptcy Estate.  The SAC and Mr. Trinchese focused their complaint on the alleged preferential transfers made by CE to the CE Settlement Trust; however, the complaint also seems to request authority to pursue *all* avoidance actions on behalf of the Bankruptcy Estate.  Neither the SAC nor Mr. Trinchese made any attempt to show that they had derivative standing to pursue such claims; instead, they argued that CE could not be relied upon to bring such avoidance actions because of an alleged conflict.  According to the SAC and Mr. Trinchese, the proposed Plan is so dependent upon the CE Settlement Trust and the distributions made by the CE Settlement Trust, CE would not bring any action that may upset the trust and

---

[1]  Capitalized terms utilized herein without definition shall have the meanings ascribed to them in the Glossary of Terms for the Plan Documents Pursuant to the Plan of Reorganization of Combustion Engineering, Inc. as Modified Through June 4, 2003, attached as Exhibit A to the Disclosure Statement.

[2]  Nothing in this Motion should be construed as an admission by CE that the filing of any present or future avoidance action is proper or justified, and CE expressly reserves any and all rights and defenses it has or may have with respect to such avoidance actions.

result in the disgorgement of such distributions. On March 7, 2003, this Court dismissed the SAC from the Complaint but allowed Mr. Trinchese to proceed as a creditor and party in interest.

2.     As demonstrated by this Motion, however, Mr. Trinchese cannot objectively and vigorously pursue all avoidance actions on behalf of the Bankruptcy Estate for the same reasons he sought the disqualification of CE -- namely, Mr. Trinchese also suffers from a debilitating conflict of interest that will impair his ability to bring such avoidance actions.

3.     Within 90 days prior to the Petition Date, CE paid amounts not only to the CE Settlement Trust, but also to other asbestos claimants and their counsel. In total, CE made over $66 million in payments to asbestos claimants and their counsel in the 90 days leading up to CE's bankruptcy filing.

4.     One such recipient of a possible preferential payment was Mr. Steve Kazan ("Mr. Kazan") and his law firm, Kazan, McClain, Edises, Simen & Abrams. On December 4, 2002, Mr. Kazan and his law firm received over $4 million from CE. This is the same individual who is the self-acknowledged leader of a group of law firms that are the principal opponents of CE's proposed Plan -- a group variously known as the SAC, or the Certain Cancer Claimants or the CCC. Mr. Kazan and his colleagues also brought the present Adversary Proceeding, and the law firm representing Mr. Kazan and such firms in the Bankruptcy Case, Montgomery, McCracken, Walker & Rhoads, LLP, is the *same* law firm that represents Mr. Trinchese in the Adversary Proceeding. Montgomery McCracken, and its co-counsel, Ms. Elizabeth Magner, also represented the SAC before it was dismissed from the Adversary Proceeding.

5.     From the foregoing, it is apparent that Mr. Trinchese and his law firm cannot possibly pursue actions against all recipients who received payments that may be found to

3

be avoidable under the Bankruptcy Code. Mr. Trinchese and his law firm would find themselves seeking the disgorgement of amounts paid to the very law firms that are supporting both Mr. Trinchese and his law firm in the Adversary Proceeding and the Bankruptcy Case in general. Such a conflict is unavoidable and is fatal to the ability of Mr. Trinchese and Montgomery McCracken to bring avoidance actions on behalf of the Bankruptcy Estate.

6.      On the other hand, Mr. Austern is the perfect party in interest to bring such actions. As this Court already found in its appointment of Mr. Austern as Future Claimants' Representative, Mr. Austern is independent and his credentials are impeccable. Further, while Mr. Austern will pursue claims for the benefit of both "present" and "future" claimants as the Bankruptcy Estate's representative for avoidance actions, the interests of all such claimants are aligned with the interests of Mr. Austern as the Future Claimants' Representative, *i.e.*, both have a direct pecuniary interest in enlarging the Bankruptcy Estate through the vigorous pursuit and appropriate resolution of *all* avoidance actions, rather than the selective pursuit of actions against only claimants who participated in the CE Settlement Trust. Finally, by authorizing one individual to bring all avoidance actions, this Court will serve to protect estate assets from the erosion that naturally occurs when multiple actions are brought by myriad parties on behalf of the estate.

7.      For the foregoing reasons, as well as those set forth below, the Plan Proponents respectfully request that this Court appoint Mr. Austern as the proper party in interest to bring all avoidance actions on behalf of the Bankruptcy Estate and substituting Mr. Austern as the party plaintiff in the Adversary Proceedings. Due to the February 17, 2005 deadline to initiate avoidance actions, time is of the essence and the Plan Proponents respectfully request that the Court enter an order granting the requested relief on an expedited basis.

4

## JURISDICTION

8.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION AND BACKGROUND

9.    This Court is intimately familiar with the facts of this Bankruptcy Case and, therefore, the Plan Proponents will only briefly recite the facts that pertain to this Motion.

10.    On February 17, 2003, CE filed a voluntary petition with this Court seeking relief under chapter 11 of the Bankruptcy Code. CE continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    The genesis of the chapter 11 filing by CE was its ever rising tide of asbestos claims which caused a crisis for both CE and its affiliated entities.

12.    Prior to its bankruptcy filing, CE and ABB entered into negotiations with counsel for CE's asbestos claimants in an effort to reach a mutually beneficial resolution of CE's asbestos liabilities. With certain notable exceptions, the negotiations between the Plan Proponents and the vast majority of the plaintiffs' bar ultimately led to the formation of the Master Settlement Agreement (the "MSA") and CE Settlement Trust. Under the MSA, the claimants who agreed to the terms of the MSA were entitled to be paid a portion of their claims out of the CE Settlement Trust.

13.    Under the terms of the MSA, the CE Settlement Trust was funded by contributions from CE. Specifically, the CE Settlement Trust received the CE Promissory Note and an assignment of the Asea Brown Boveri Loan. The CE Settlement Trust was funded on or about November 22, 2002.

5

14.    In addition to the transfers made to the CE Settlement Trust, CE continued to pay asbestos claimants whose claims had been approved by the claims reviewer for CE, Connecticut Valley Claims Services Company, Inc. In total, more than $66 million was paid to asbestos claimants within 90 days of the Petition Date, including over $4 million to Mr. Kazan and his law firm, as well as many of the law firms who represent individuals on the Official Committee of Unsecured Creditors.

### The Trinchese Adversary Proceeding

15.    Almost immediately following the Petition Date, the SAC filed a complaint seeking to enjoin the CE Settlement Trust from disbursing its funds to the claimants who participated in the MSA. (Compl. ¶ 1, at 2-3.) The SAC also sought permission to bring avoidance claims on behalf of the Bankruptcy Estate. (*Id.* at 1-2.)

16.    The SAC describes itself as "a group of law firms specializing in the representation of individuals suffering with cancers (mesothelioma, lung and others) caused by exposure to asbestos products." (*Plfs' Mot. for Temp. Restraining Or.* [Adv. Dkt. 3] ¶ 1, at 2.). The SAC later renamed itself the "Certain Cancer Claimants" (the "CCC") and is the same group led by Mr. Kazan. Perhaps recognizing that "a group of law firms" who are not creditors and lack any interest in the alleged preferential transfers do not have standing to bring an avoidance action on behalf of the estate, the SAC included a "straw man" in the Adversary Proceeding, Mr. Trinchese, to serve as an additional plaintiff. For all intents and purposes, Mr. Trinchese and the SAC (and, for that matter, the CCC) are one and the same. *See* discussion *infra.*

17.    According to the SAC, the transfer of the CE Settlement Trust Assets by CE were avoidable preferences since, among other things, they were made within 90 days of the Petition Date, were made while CE was insolvent, and allowed the CE Settlement Trust and participating claimants to receive more than they would have received in a chapter 7 bankruptcy

6

proceeding. (Compl. ¶¶ 85-89, at 21.) Further, the SAC reasoned that since the CE Settlement
Trust was funded in connection with the Bankruptcy Case, CE "can not [sic] be expected to
pursue avoidance actions against the recipients of the Trust payments." (*Id.* ¶ 91, at 22.) This
alleged conflict served as the main basis for the relief requested by the SAC -- that the Court
permit the SAC and Plaintiff to bring avoidance actions on behalf of CE's Bankruptcy Estate,
rather than CE.

18.     On March 7, 2003, the Court found that the SAC lacked standing to
maintain the subject Adversary Proceeding; however, the Court found that Plaintiff, as a creditor
of the Bankruptcy Estate, had standing to seek the relief requested in the Complaint. (*Pre-
Petition Comm. of Sel. Asbestos Claimants, et al. v. Combustion Eng'g, Inc., et al. (In re
Combustion Eng'g, Inc.)*, Ch. 11 Case No. 03-10495, Adv. No. 03-50995, mem. op. at 4-5
(Bankr. D. Del. March 7, 2003) ("Memorandum Opinion").) The Memorandum Opinion,
however, is unclear as to whether Plaintiff is authorized to pursue only those allegedly avoidable
transfers made in connection with the CE Settlement Trust, or, as requested by the SAC and
Plaintiff in portions of their Complaint, *all* avoidance actions on behalf of the Bankruptcy Estate.
(Compl. at 27 ("WHEREFORE, the Plaintiffs seek entry of an order authorizing Plaintiffs to
pursue avoidance actions . . . on behalf of the estate").)

19.     With respect to the current status of the Adversary Proceeding, on or about
October 22, 2003, the Trustee for the CE Settlement Trust filed a motion to dismiss the
Adversary Proceeding. Upon information and belief, that motion has been briefed and is
awaiting decision. According to the docket, no party has taken any action in the Adversary
Proceeding since the filing of the papers related to the Trustee's motion to dismiss.

7

## RELIEF REQUESTED

20.    CE respectfully requests that the Court authorize Mr. Austern, the Court appointed Future Claimants' Representative, to pursue and, if appropriate, prosecute any and all alleged avoidance actions on behalf of the Bankruptcy Estate, including those causes of action already brought by Plaintiff in the Adversary Proceeding and to substitute Mr. Austern as the party plaintiff in the Adversary Proceeding. For the reasons set forth below, just as CE "cannot be expected to pursue avoidance actions" against the asbestos claimants and claimants' counsel because of an alleged conflict, Plaintiff cannot be expected to pursue these claims either.

21.    Plaintiff's ability to pursue avoidance actions is hampered by his own conflict of interest. For example, if Plaintiff were to pursue all preference claims on behalf of the Bankruptcy Estate, such claims would invariably include claims against the very law firms that make up the SAC/CCC, as well as the same the firms who are financing the Adversary Proceeding and oppose the Plan. In addition, Montgomery McCracken represents not only Plaintiff, but also Mr. Kazan and his law firm, *and*, upon information and belief, many, if not all of the other law firms that constitute the SAC/CCC. Without question, Plaintiff's ability to pursue such claims in an objective and vigorous manner would be impeded because of the relationship of Plaintiff and his law firm with such firms. On the other hand, Mr. Austern suffers from no such conflict and, therefore, can be trusted to pursue the alleged avoidance actions on behalf and for the benefit of the Bankruptcy Estate.

## GROUNDS FOR RELIEF REQUESTED

22.    Section 1107 of the Bankruptcy Code provides in relevant part that a debtor-in-possession has the authority to pursue avoidance actions, including avoidance of alleged preferential transfers made by the debtor within 90 days of the filing of the bankruptcy petition. *See* 11 U.S.C. § 1107 ("a debtor-in-possession shall have all the rights . . . and powers .

8

. . of a trustee serving in a case under this chapter"); *see also* 11 U.S.C. § 547(b) ("the trustee may avoid any transfer [satisfying the following elements] . . .").

        23.    Under certain circumstances, courts have appointed trustees and authorized creditors committees to pursue such avoidance claims on behalf of the debtor and its estate. *See Official Cmte. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003). Only rarely, however, will a court allow an individual creditor to bring an avoidance action on behalf of the estate. *See In re Dur Jac Ltd.*, 254 B.R. 279, 286 (Bankr. M.D. Ala. 2000) (appointment of an individual creditor to pursue avoidance claims should only be authorized sparingly). Indeed, the appointment of an individual creditor to pursue such claims may cause more problems than it solves, such as "creditor conflicts of interest (absent a trustee or examiner), potential for spiteful, dilatory or wasteful litigation tactics, and the risk of side deal settlements." *NBD Park Ridge Bank v. SRJ Enters., Inc. (In re SRJ Enters., Inc.)*, 151 B.R. 189, 196 n.7 (Bankr. N.D. Ill. 1993) (individual creditor did not have standing to bring preference avoidance action). As a result, courts view such relief as an extraordinary remedy and will authorize an individual creditor to bring avoidance actions on behalf of the estate only upon a showing of proper cause. *See Dur Jac*, 254 B.R. at 285-86.

        24.    If a creditor, or any entity for that matter, has a conflict of interest that may prevent it from objectively and vigorously pursuing avoidance actions, such cause cannot be shown. With respect to conflicts of interest, it is clear that a court will not hesitate to appoint an alternative party to bring avoidance actions where there is an inherent conflict of interest that may inhibit the original party's ability or desire to pursue certain avoidance actions on behalf of the estate. *See In re Tel-Net Hawaii, Inc.*, 105 B.R. 594, 595 (Bankr. D. Hawaii 1989) (appointment of trustee deemed in best interests of estate when debtor failed to make any effort

9

to avoid preferential transfers because of conflict of interest); *see also Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 244-53 (5th Cir. 1988) (holding that a creditors committee has standing to bring a suit against the officers and directors of the debtor based in part to the clear conflict of interest of the debtor in bringing such suit).

25.    Plaintiff in the present case suffers from the same type of debilitating conflict as the debtors in the foregoing cases. As set forth above, asbestos claimants and their law firms received over $66 million in the 90 days leading up to the Petition Date. These payments were made not only to claimants and law firms who entered into the MSA, but also to claimants and law firms that chose not to participate in the pre-petition settlement under the MSA. Indeed, such non-participating claimants and law firms received amounts totaling almost $19 million.

26.    It is well known that these non-participating law firms, including Mr. Kazan and his firm, are the catalysts behind both Plaintiff's Adversary Proceeding and the CCC's opposition to the Plan in general. Indeed, as set forth above, Montgomery McCracken and Ms. Magner represent Plaintiff, Mr. Kazan and his law firm, *and* the myriad other law firms that comprise the SAC/CCC.

27.    Just as the debtor in *Dur Jac* could not be expected to sue the children and step-children of the debtor's principal, neither can Plaintiff be expected to vigorously pursue avoidance actions against the very law firms that brought the Adversary Proceeding in the first place and that have been the driving force behind the Adversary Proceeding ever since. *See Dur Jac*, 254 B.R. at 286 ("[t]he obvious conflict of interest in a case such as this calls for close scrutiny by the Court when transactions with related parties are involved"); *see also Gibson*, 66 F.3d at 1445 ("[n]o acute perception is required to surmise the conflicts that might prevent [the

10

debtor] from suing its directors an [sic] officers or preventing it from seeking to staunch the source paying their legal fees").

28.    Mr. Austern, on the other hand, suffers from no such conflict of interest. As set forth in the Disclosure Statement and CE's motion seeking the appointment of Mr. Austern as Future Claimants' Representative, Mr. Austern's credentials are above reproach. Mr. Austern is a nationally recognized leader in the management of asbestos-related personal injury claims. He is the General Counsel of the Manville Trust, the President of the Claims Resolution Management Corporation (a wholly-owned subsidiary of the Manville Trust that serves as the claims administrator for that trust and others), and a former Assistant United States Attorney in Washington, DC. (Dbt's Mot. to Appoint Austern as Future Claimants Representative [Dkt. No. 22] at 6-7; Discl. Stmt. § 3.4, at 21.) Further, Mr. Austern has never represented a current plaintiff, defendant, or insurer in any asbestos litigation against CE, ABB and/or any other non-debtor affiliates of CE, and has never had a relationship with, or connection to, any of the foregoing entities. (Discl. Stmt. § 3.4, at 21.)

29.    Also favoring Mr. Austern's appointment is his status as Future Claimants' Representative. As the representative for the entire Bankruptcy Estate, Mr. Austern will be in a position to pursue claims for the benefit of both present claimants who did not participate in the MSA, as well as those claimants who may have future claims against the estate. Both such claimants have a direct pecuniary interest in the recovery of as many assets as possible for the benefit of the Bankruptcy Estate and Asbestos PI Trust, rather than the recovery of assets from only one class of claimants. Therefore, as Future Claimants' Representative, Mr. Austern's interests already lie with the constituencies he will represent on behalf of the estate. On the other hand, it is clear that Plaintiff will not vigorously pursue avoidance actions against individuals or

11

entities that received payments outside of the CE Settlement Trust when such actions would be against the individuals and entities supporting the Adversary Proceeding and that stand in opposition to the Plan.

30.    Finally, allowing Mr. Austern to pursue *all* possible avoidance actions in an objective and vigorous manner will inure to the benefit of the Bankruptcy Estate by preventing multiple actions brought by numerous parties thereby reducing the transaction costs and wasteful litigation that typically accompany such piecemeal claims. Allowing one individual to serve as the estate representative also will avoid the possibility of inconsistent judgments that occasionally occur when numerous parties bring similar claims.

## CONCLUSION

31.    Plaintiff's Adversary Proceeding seeks authority to prosecute avoidance actions against individuals who allegedly received preferential payments and/or fraudulent transfers. Presumably, Plaintiff seeks this authority to benefit the Bankruptcy Estate. As set forth above, almost $19 million was paid to non-participating claimants and their law firms within the 90-day preference period. Yet, Plaintiff cannot be expected to vigorously pursue such amounts because they were paid to the same group that initiated the Adversary Proceeding, opposed the Plan allegedly on behalf of individuals such as Plaintiff, and is the same group that is represented by *Plaintiff's own law firm*.

32.    Conversely, Mr. Austern is independent and his interests and those of the individuals he would represent on behalf of the Bankruptcy Estate, lie squarely in recovering as many assets as possible for the benefit of the Bankruptcy Estate, including from *all recipients of payments made within 90 days of the Petition Date*, if appropriate. Thus, Mr. Austern, and not an individual creditor who is inexorably tied to the SAC, the CCC, their lawyers, and Mr. Kazan, is the proper party to bring avoidance actions on behalf of the Bankruptcy Estate.

12

WHEREFORE, for all the foregoing reasons, the Plan Proponents respectfully request that this Court enter an Order: (i) granting the Motion; (ii) appointing Mr. Austern as the representative of the Bankruptcy Estate and authorizing Mr. Austern to bring all avoidance actions in the above-captioned proceeding on behalf of the Bankruptcy Estate; (iii) removing Mr. Trinchese and substituting Mr. Austern as the party plaintiff in the Adversary Proceeding; and (iv) for such other and further relief as this Court deems just and proper.

Dated: January 6, 2005

Respectfully submitted,

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Jeffrey N. Rich (Bar No. JR 7183)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 536-4907

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Curtis A. Hehn (Bar No. 4264)
Michael P. Migliore (Bar No. 4331)
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400

Counsel for Debtor and Debtor-in-Possession

DOCS_DE:104378.1