UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                                                         :
In re:                                                   :   CHAPTER 11
                                                         :
    Combustion Engineering, Inc.,              :   Case No. 03-10495 (JKF)
                                                         :
        Debtor.                                 :   **Hearing Date: 1/27/2005 @ 1:00 p.m. (proposed)**
---------------------------------------------------------X   **Obj. Deadline: 1/20/2005 @ 4:00 p.m. (proposed)**

**MOTION OF CREDITORS WILLIAM AIRGOOD, ANTHONY DEFABBO AND
ERIC TRAVERS FOR AN ORDER AUTHORIZING THEM TO COMMENCE
AND PROSECUTE AN AVOIDANCE ACTION ON BEHALF OF THE DEBTOR**

      Plaintiffs, William Airgood, Anthony DeFabbo and Eric Travers ("Movants" or "Plaintiffs"), creditors with unliquidated asbestos personal injury claims against the Debtor in the above-captioned case, respectfully move this Court for an order authorizing them to commence and prosecute an avoidance action on behalf of Combustion Engineering. In support of this motion, the Movants respectfully represent as follows:

**The Movants**

      1.   William Airgood was diagnosed as having an asbestos-related disease in or around 1999. He is an unsecured creditor of the Debtor with an unliquidated claim that has been pending against the company since 1999.

      2.   Anthony DeFabbo was diagnosed as having an asbestos-related disease in or around 1999. He is an unsecured creditor of the Debtor with an unliquidated claim that has been pending against the company since 1999.

      3.   Eric Travers was diagnosed as having an asbestos-related disease in or around 1999. He is an unsecured creditor of the Debtor with an unliquidated claim that has been pending against the company since 1999.

      4.   The proposed defendants are:

  a. Joseph F. Rice;

  b. Ronald Motley;

  c. Fred Baron;

  d. Russell Budd;

  e. Perry Weitz;

  f. Brent Coon;

  g. Steven Kazan;

  h. John Cooney;

  i. Cooney & Conway;

  j. Kazan, McClain, Edises, Abrams, Fernandez, Lyons & Farrise;

  k. Ness Motley PA;

  l. Motley Rice LLC;

  m. Alan Kellman;

  n. The Jaques Admiralty Law Firm P.C.;

  o. Brent Coon & Associates;

  p. Baron & Budd, P.C.;

  q. Foster & Sear, LLP;

  r. Silver Pearlman, L.L.P.;

  s. Law Offices of Peter G. Angelos;

  t. Provost Humphrey Law Firm LLP;

  u. Reaud Morgan & Quinn;

  v. Williams-Bailey Law Firm, L.L.P.;

  w. Wise & Julian; and

   x. John Does 1-50.

 5. The above-listed Attorney Defendants are asbestos-personal injury attorneys. As discussed in more detail below, within 90 days immediately preceding the filing of the petition in this bankruptcy case, some or all of these defendants received transfers from a pre-petition trust established for the benefit of their asbestos personal injury clients and retained approximately $175,000,000 of these transfers as attorneys' fees and expenses. Movants seek authorization to commence on the Debtor's behalf an avoidance action to return those funds to the estate.

## The CE Settlement Trust

 6. On February 18, 2003 ("the Commencement Date"), Combustion Engineering, Inc. (the "Debtor" or "CE") filed a voluntary petition under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

 7. Eighty-seven days before the Commencement Date, the Debtor deposited approximately $507,000,000 cash and other things of value in a pre-petition trust, denominated the "CE Settlement Trust." *In re Combustion Engineering*, 391 F.3d 190, 238 (3d Cir. 2004). The CE Settlement Trust was established to pay asbestos personal injury claims pending against the Debtor. *Id.* at 204.

 8. The CE Settlement Trust was created and funded at a time when the Debtor was insolvent. *Id.* at 240.

 9. The CE Settlement Trust provides for three levels, or "categories," of payment, supposedly depending upon the procedural status of an individual's claim. Category 1 claimants will receive 95% of the value of their claim; Category 2 claimants will receive 85%; and Category 3 claimants are to receive between 37 ½ and 75%. As a result, claimants with identical asbestos-related diseases will receive different amounts (and will be paid on different

dates) merely on the basis of how far their claims have progressed in the litigation and settlement process.

10. Upon information and belief, between the date of the formation and funding of the CE Settlement Trust and the Commencement Date, all the funds that the Debtor had deposited in the trust were transferred to the defendants (the "Transfers").

11. Upon information and belief, approximately $175,000,000 of the Transfers was retained by the Attorney-Defendants as attorneys' fees and expenses.

12. The transfers of funds from the Collateral Trust to the Attorney Defendants are plainly preferences and fraudulent transfers in violation of the Bankruptcy Code. *Id.* at 240.

13. Plaintiffs intend to prosecute this action, derivatively on behalf of the Debtor, for the benefit of the estate and all creditors, to recover the sum of approximately $175,000,000 that was retained from the Transfers by the defendants as attorneys' fees and expenses (the "Fee Transfers").

14. Plaintiffs do not seek to recover that portion of the Transfers that was paid to asbestos personal injury claimants.

**Demand**

15. On December 2, 2004, counsel for the Plaintiffs wrote to Debtor's counsel, demanding that the Debtor commence avoidance proceedings. A copy of the demand is attached as Exhibit A.

16. On December 7, 2004, Debtor's counsel responded that an adversary proceeding commenced by a creditor, Victor Trinchese, in March 2003 "constitute[s] the avoidance proceedings that you describe," and that the bankruptcy court had issued an order permitting Mr. Trinchese to proceed.

17. Upon information and belief, no order has ever been issued permitting Mr. Trinchese to proceed with an avoidance action and Mr. Trinchese has taken no steps during the immediately preceding twelve months to pursue such an action.

18. Inquiries made of Mr. Trinchese's counsel as to whether his client intends to proceed with a avoidance action have gone unanswered.

19. Despite the obvious illegality of the transfers and demands from the Movants, the Debtor has unjustifiably refused to commence an avoidance action. As discussed in more detail below, the relief sought in the Debtor's recent motion to appoint David Austern as the party in interest to pursue all avoidance actions is inadequate and fails to address Movant's concerns.

20. If this action proceeds and is successful, the benefit to the estate will likely exceed $175,000,000 and will far exceed the costs and fees incurred in prosecuting this action.

21. Because the deadline to commence an avoidance action is February 17, 2005, Movants respectfully request that this Court consider this motion on an expedited basis.

## Jurisdiction

22. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

23. This adversary proceeding arises in and relates to the Debtor's case pending before this Court under Chapter 11 of the Bankruptcy Code.

24. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## The Avoidance Action

25. The Movants seek authority to prosecute the following avoidance claim on behalf of the Debtors: under Sections 547 and 550, seeking the return of that portion of the approximately

$507,000,000 that was (i) transferred from the CE Settlement Trust within the 90 days of the Commencement Date and (ii) retained by Defendant Attorneys.

26. The Movants do not seek to avoid any portion of the preferential transfers that were ultimately received by individual asbestos personal injury claimants. They seek the return to the estate only of that portion that was retained by the Attorney Defendants as fees and expenses.

## **Standing**

27.     The Movants have derivative standing to bring this action because: (i) the Debtor refuses to; (ii) there is no trustee; (iii) the Movants have colorable preference claims; and (iv) the avoidance action will result in a return to the estate, for the benefit of all creditors, of an amount to be determined at trial, but believed to be in excess of $175,000,000.

28.     Because the Debtor has refused, without justification, to bring an avoidance action, the individual creditors have derivative standing to do so.

29.     The Third Circuit has explicitly recognized the right of individual creditors to commence avoidance actions on behalf of the estate. As recently as October of 2004, Judge Farnan confirmed that creditors have derivative standing to prosecute avoidance claims in bankruptcy actions. *See Infinity Investors Ltd. v. Kingsborough*, 316 B.R. 141 (D. Del. 2004). In so holding, Judge Farnan relied on the Third Circuit's decision in *The Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 563-66, 569-71 (3d Cir. 2003) ("*Cybergenics II*"). In *Cybergenics II*, the Court of Appeals held that a creditors committee has standing to commence an avoidance action, and its holding was based on what the Court expressly recognized as the standing of *creditors* to commence such actions. *Id. See also, In re McKeesport Steel Castings Co.*, 799 F.2d 91, 93-94 (3d Cir. 1986) (individual creditor had derivative standing to pursue a claim under Section 506(c) of the Code where neither the debtor not the creditors committee would bring the action); *In re Valley Media, Inc.*, No. 01-11353,

2004 WL 21956410 at *2 (Bankr. D. Del. August 14, 2003) (discussing *Cybergenics II* and the "procedures bankruptcy courts should follow in allowing *creditors* derivative standing") (emphasis supplied); *In re Laramie Assocs., Ltd.*, No. 95-19102, 1996 WL 549984, at * 2 (Bankr. E.D. Pa. June 20, 1996) (citing with approval cases in which creditors have been permitted to prosecute avoidance and similar claims on behalf of the estate); *In re Gibson Group, Inc.*, 66 F.3d 1436 (6th Cir. 1995) (granting individual authority to bring avoidance action).

30. The grant of authority is essential in this action, because except for the Debtor, who has failed to act, the Movants are the only persons with standing to seek return to the estate of the unlawfully transferred funds who will vigorously prosecute an avoidance action.

31. In *In re Chernicky Coal Co.*, the court held that because there was no trustee and the debtor would not have filed an avoidance action, a creditor-insurance company had standing to file a complaint to avoid an unlawful post-petition transfer. *Travelers Indemnity Co. v. Chernicky Coal Co. (In re Chernicky Coal Co.)*, 67 B.R. 828, 832 (Bankr. W.D. Pa. 1986) (relying on *McKeesport*); *see also Gibson Group*, 66 F.3d at 1446 (granting individual creditor authority to commence actions to avoid preferential and fraudulent transfers); *Shelby Motel*, 123 B.R. at 102-103 (discussing at length the derivative standing of an individual creditor to bring an avoidance action).

32. Here, as in *Chernicky Coal Co.*, there is no trustee to bring the avoidance action. The Debtor has no plan to commence such an action. On the contrary, until Plaintiffs' counsel demanded that the Debtor commence an avoidance action (*supra* ¶ 15), it was apparent that the Debtor intended to allow the limitations period for the commencement of such an action to expire.

## Colorable Claims

33.     The complaint that Plaintiffs seek to file will allege that while the Debtor was insolvent, it deposited approximately $507,000,000 in the CE Settlement Trust.  Those transfers were made within 90 days before the Commencement Date, for or on account of an antecedent debt, and the Attorney Defendants retained approximately $175,000,000 for their exclusive benefit.  The CE Settlement Trust participants received up to 95% of their claim value which, as noted by the Third Circuit in *In re Combustion Engineering*, was far more than they would have received in a Chapter 7 liquidation had no transfer been made.  *In re Combustion Engineering*, 391 F. 3d 190, 240 (3d Cir. 2004); *see* Code § 547(b).

**34.**     These allegations suffice to state a colorable claim for an avoidance action.  *See, e.g., Chemical Bank*, 1994 WL 714287 at *3 (finding individual creditor had colorable avoidance claim where it alleged the debtor had transferred funds during a time when it was in default on a bank loan); *Shelby Motel Group*, 123 B.R. at 103-104.  The Third Circuit has ruled that the pre-petition payments from the CE Settlement Trust, made eighty seven days before filing for bankruptcy while the company was insolvent, may constitute voidable preferences.  *Combustion Engineering*, 391 F. 3d at 240.

35.     If the Movants successfully prosecute the avoidance action, the estate and all creditors will benefit.  *In re Nicolet, Inc.*, 80 B.R. 733, 738-39 (Bankr. E.D. Pa. 1987); *see Official Committee of Unsecured Creditor of National Forge Co. v. Clark (In re National Forge Co.)*, 304 B.R. 214, 221-23 (Bankr. W.D. Pa. 2004) (unsecured creditors committee had authority to bring colorable fraudulent transfer claim even through it did not first request debtors to bring action).  If the action is not prosecuted, the fundamental purpose of bankruptcy proceedings – equitable distribution of the Debtor's estate to its creditors – will be subverted.

36.     The amount that will be returned to the estate if the avoidance action is successful is believed to be approximately $175,000,000. The fees and costs to the estate of prosecuting the avoidance action will be a small fraction of that amount.

## The Debtor's Motion

37.     On January 6, 2005, the Debtor, along with "other proponents of CE's proposed Plan of Reorganization," filed a motion for entry of an order authorizing David Austern ("Austern"), the Future Claimants' Representative ("FCR"), to bring "any and all avoidance actions" in the CE Bankruptcy Case on behalf of the estate (the "Debtor's Motion").

38.     Austern is not the appropriate party to commence and prosecute any and all avoidance actions on behalf of the estate. Austern previously expressed "strong support" for confirmation of the plan that included the CE Settlement Trust, calling it "fair and equitable" on the record. *See* Dkt. # 812. He has also previously testified that he is opposed to an avoidance action.

39.     Neither Austern nor the Debtor made any effort to avoid the CE Settlement Trust during the more than two years it has been in existence. This raises serious question as to Austern's desire and ability actively to pursue avoidance actions on behalf of the estate.

40.     The Debtor argues that Trinchese suffers from "a debilitating conflict of interest that will impair his ability to bring such avoidance actions." So does Austern.

41.     In short, unless the Movants are granted authority to proceed, claims to millions of dollars owed to the estate will likely be forfeited.

## **CONCLUSION**

This Court should authorize William Airgood, Anthony DeFabbo and Eric Travers to prosecute an avoidance action on behalf of the Debtor.

Dated: January 14, 2005

/s/ Christopher D. Loizides
Christopher Loizides (Del. Bar No. 3968)
LOIZIDES & ASSOCIATES
Legal Arts Building
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone:	(302) 654-0248
Facsimile:	(302) 654-0248
E-mail:	Loizides@loizides.com

Joseph D. Pope
(admitted *pro hac vice*)
COHEN POPE PLLC
1633 Broadway, 20th Floor
New York, New York 10019
(212) 319-7757

*Attorneys for Creditors William Airgood, Anthony DeFabbo and Eric Travers*

**EXHIBIT SUMMARY SHEET**

The following exhibits are attached to this Motion:

1.      Exhibit "A":
Demand Letter of December 2, 2004 from Joseph D. Pope, Esq. on behalf of William Airgood and Anthony DeFabbo to Laura Davis Jones, Esq. of Pachulski Stang Ziehl Young Jones & Weintraub, PC representing the debtors.