IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
: 
In re:                                                        :   CHAPTER 11
      Combustion Engineering, Inc.,          :   Case No. 03-10495 (JKF)
: 
: Hearing date: January 27, 2005, 1:00 p.m.
           Debtor.                                   : (Pittsburgh, PA)
: Objection deadline: January 18, 2005, 4:00p.m.
: 
: Re:   Docket No. 1918
------------------------------------------------------X

**OBJECTION OF UNSECURED CREDITORS WILLIAM AIRGOOD, ANTHONY DeFABBO, ERIC TRAVERS TO PLAN PROPONENTS' MOTION TO APPOINT DAVID AUSTERN AS PARTY IN INTEREST TO PURSUE AVOIDANCE ACTIONS ON BEHALF OF THE BANKRUPTCY ESTATE**

William Airgood, Anthony DeFabbo, and Eric Travers ("Movants"), creditors with unliquidated asbestos personal injury claims against the Debtor in the above-captioned case, respectfully object to the Plan Proponents' motion to authorize David Austern to pursue avoidance actions on behalf of the Debtor. In support of this Objection (the "Objection"), the Movants respectfully represent as follows:

### PRELIMINARY STATEMENT

1.     More than one month has passed since the United States Court of Appeals for the Third Circuit issued its ruling in *In Re: Combustion Engineering*, 2004 WL 2743565 (3rd Cir. Dec. 2, 2004), in which it all but issued summary judgment avoiding the pre-petition trust established by the Debtor eighty-seven days before the filing of the petition in this action. More than one month has passed since counsel for the Movants demanded that the Debtor commence avoidance proceedings to recover the portion of the millions of dollars that were retained by various counsel for asbestos

Pursued -- "appears to constitute the avoidance proceedings" sought in the demand, the Debtor radically changed its position. Now the Debtor and unidentified "plan proponents" (collectively referred to as the "Proponents") have moved for an order (i) authorizing David Austern, the futures representative in this case ("Austern" or the "FCR") to pursue avoidance actions on behalf of the bankruptcy estate.

2. The motion should be denied. Among other things, the identity of the Proponents has not been revealed, violating Bankruptcy Rule 7017 and making it impossible to determine whether there is an actual or potential conflict between the FCR and those who are proposing his appointment. Second, the FCR is neither a creditor of the estate nor the legal representative of a creditor. The Proponents have cited no authority, and we know of none, that confers upon persons other than creditors or committees of creditors, standing to pursue avoidance actions on behalf of a bankruptcy estate. Even if there were authority for such derivative standing, the FCR has a conflict of interest that makes him ineligible to serve as the estate's surrogate: he previously went on record in this case opposing the prosecution of any avoidance action and he described himself as a "social friend" of one of the lawyers who would be a principal defendant in an avoidance action. Also, his pre-petition involvement with this case, and his knowledge of the negotiations that took place during the pre- and post-petition periods, make him a potential witness. Finally, apart from the conflicts of interest, the FCR's conduct to date shows that he cannot, and should not, be relied upon to prosecute avoidance claims vigorously: during a period when he could have effectively opposed or challenged the transfers at issue here, he did nothing.

## JURISDICTION

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O).

## FACTS

The Movants

4.     In or around 1999, William Airgood was diagnosed as having an asbestos-related disease. He is an unsecured creditor of Combustion Engineering with an unliquidated claim that has been pending against the company since 1999.

5.     In or around 1999, Anthony DeFabbo was diagnosed as having an asbestos-related disease. He is an unsecured creditor of Combustion Engineering, with an unliquidated claim that has been pending against the company since 1999.

6.     In or around 1990, Eric Travers was diagnosed as having an asbestos-related disease. He is an unsecured creditor of Combustion Engineering with an unliquidated claim that has been pending against the company since in or around 1990.

The Voidable Preference

7.     During the eighty-seven days immediately preceding the filing of the petition in this bankruptcy case, at a time when it was insolvent, the Debtor deposited approximately $507,000,000 into the CE Settlement Trust (the "Collateral Trust").

8.     One of the architects and principal beneficiaries of the Collateral Trust is Joseph F. Rice.

9.     Austern was appointed FCR on November 15, 2003, effective October 29, 2003.

10. Joseph Rice recommended the appointment of Austern.

11. Austern regards Joseph Rice as a "social friend." FCR Dep. at 113 (included in Exhibit 1)..

12. Upon information and belief, Joseph Rice appointed Austern as FCR in the Crane Co. bankruptcy.

13. At the time the Austern was appointed FCR in the instant case, the Collateral Trust (and the related Master Settlement Agreement) were "done deals."

14. From the date of his appointment until the date the petition was filed in this bankruptcy case, the FCR voiced no objection to the Collateral Trust (or the Master Settlement Agreement) and took no action to eliminate it or modify its terms.

15. Following the filing of the petition in this bankruptcy case, the FCR took no action to eliminate or modify the Collateral Trust, nor did he ever indicate that he would withdraw his support for the proposed plan of reorganization if the Collateral Trust were not eliminated or modified.

16. The FCR never considered whether payments under the Collateral Trust might constitute a preference. FCR Dep. at 171 (included in Exhibit 1); May 2, 2003 Tr. at 16 (included in Exhibit 2).

17. The FCR never considered the consequences of avoiding the Collateral Trust, whether removing funds from the Collateral Trust would benefit the estate. FCR Dep. at 228-29 (included in Exhibit 1); May 1, 2003 Tr. at 366-67 (included in Exhibit 3).

18.     Without having conducted any study of the legality of the Collateral Trust, the FCR endorsed the plan of reorganization, which included that trust, on January 19, 2003. May 1, 2003 Tr. at 347, 353 (included in Exhibit 3).

19.     The FCR regarded the proposed plan of reorganization as the best possible plan from the futures' point of view. May 1, 2003 Tr. at 324 (included in Exhibit 3). During the confirmation hearings, the FCR stated his opposition to avoidance proceedings:

> Bringing fraudulent transfer actions I believe would result in the value of the ABB stock, as well as the guarantees that have come with further negotiations, being absolutely wiped out, and the futures, if they didn't get nothing, would get substantially less.

May 1, 2003 Tr. at 325 (included in Exhibit 3).

20.     In *Combustion Engineering*, the Court wrote that the pre-petition payments "may constitute voidable preferences," and went on to describe how the payments appeared to meet all the statutory conditions for voidable preferences.

21.     On December 2, 2004, counsel for the Movants wrote to the Debtor demanding that it commence avoidance proceedings to recover funds and other things of value that had been transferred from the CE Settlement Trust.

22.     On December 7, 2004, Debtor's counsel wrote that an adversary complaint filed by Victor Trinchese in March 2003 had been authorized by this Court and that the "Trinchese complaint appears to constitute the avoidance proceedings that" the Movants were demanding.

23.     The Debtor has never produced a copy of any order authorizing Mr. Trinchese to proceed with an adversary complaint.

24. On January 6, the Proponents (a group that includes the Debtor) filed the instant motion, contending that Mr. Trinchese "cannot objectively and vigorously pursue all avoidance actions . . ." because he "suffers from a debilitating conflict of interest that will impair his ability to bring such" actions. Motion ¶ 2; *id.*, ¶¶ 3-6, 16, 21, 25, 27.

25. On January 14, 2005, the Movants filed a motion seeking leave to pursue a derivative avoidance action on behalf of the estate.

## ARGUMENT

26. As a threshold matter, the Motion should be denied because the Proponents have not been identified. The failure to reveal their identity violates Bankruptcy Rule 7017, which requires that all actions be prosecuted in the name of the real party in interest.

27. Strict compliance with that rule is essential in this case, because there may be an actual or potential conflict of interest between one or more of the Proponents and the FCR.

28. A second obstacle to the Motion is that neither the FCR nor his constituents is a creditor of the estate. The Proponents have cited no authority, and we know of none, permitting persons in the position of the FCR to prosecute avoidance actions.

29. Even if the FCR were a proper party to pursue such actions, in this case, the FCR has a conflict of interest. First, as the representative of future claimants, he has a fiduciary duty to obtain for them "the *greatest possible share* of the bankruptcy estate." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 304 (3d Cir. 2004) (emphasis added).

However, the FCR acknowledged under oath that avoidance proceedings would be detrimental to the interests of the futures (*supra* ¶ 19). That acknowledgment disqualifies him. See ABA Model Rules of Professional Conduct, 1.7(a)(1). Second, the FCR in this case has acknowledged a social relationship with Mr. Rice, who will be a principal defendant in any avoidance action and who is also a source of business for the FCR (having recommended the FCR for the position in this and at least one other bankruptcy). The social and professional relationship with Rice gives rise to another disabling conflict. Model Rules, 1.7(a)(2).

30. Another conflict arises from the FCR's involvement with pre- and post-petition activities in this case. Although he disclaims involvement in the negotiation of the Collateral Trust, it is inconceivable that the FCR had no discussions about it during his long involvement with this case, which began pre-petition and ran through at least the period during which confirmation hearings were held. In any event, he gave extensive consideration to the prudence of various avoidance actions. Under the circumstances, it is obvious that he will be a witness in any avoidance proceeding. See Model Code of Professional Responsibility, DR 5-101(B).

31. In addition to the conflicts of interest, the FCR has already been shown to lack to the commitment and ardor necessary for the successful prosecution of avoidance actions. During both the pre- and post-petition periods, when the Collateral Trust was in place and the FCR could have either objected or sought to modify it, or could have withheld his approval of the proposed plan, he did nothing. He simply expressed his recommendation that the plan be approved.

## CONCLUSION

This Court should deny the Proponents' Motion.

DATED: January 18, 2006

        /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
Email: loizides@loizides.com

-- and --

Joseph D. Pope, Esquire
Nicole Tuman, Esquire
COHEN POPE PLLC
10 East 53rd Street, 35th Floor
New York, New York 10022
Telephone: (212) 319-7757

*Counsel for Creditors William Airgood, Anthony DeFabbo and Eric Travers*