IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMBUSTION ENGINEERING, INC., | ) | Case No. 03-10495 (JKF) |
| | ) | |
| Debtor. | ) | |
| | | |
| VICTOR TRINCHESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. No. 03-50995 (JKF) |
| v. | ) | |
| | ) | |
| COMBUSTION ENGINEERING, INC., HASBROUCK HAYNES, JR. CPA as Regular Trustee of the CE Settlement Trust dated November 22, 2002, WILMINGTON TRUST COMPANY, a Delaware Banking Corporation, as the Delaware Trustee of the CE Settlement Trust dated November 22, 2002, JOSEPH F. RICE, Claimant Representative, THE CE SETTLEMENT TRUST dated November 22, 2002, and JOHN AND JANE DOES Nos. 1-75,000 (being unknown persons and/or entities to whom payment was made from the Trust and those unknown persons and entities for whose benefit such payments were made within ninety (90) days prior to Debtor's bankruptcy petition), | ) | **Hearing Date: January 27, 2005 at 1 p.m. in Pittsburgh, Pennsylvania** |
| Defendants. | ) | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION
TO THE APPOINTMENT OF DAVID AUSTERN AS ESTATE REPRESENTATIVE
TO PURSUE AVOIDANCE ACTIONS AND REQUEST FOR FURTHER RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Combustion Engineering, Inc. (the "Debtor"), by its attorneys, (a) objects on a limited basis to the Plan Proponents' Motion to Appoint David Austern as Party in Interest Authorized to Pursue

{D0035993:1 }NGEDOCS: 017213.0040:1118446.1

Avoidance Actions on Behalf of the Bankruptcy Estate (the "Austern Motion")[1], and (b) seeks authorization to commence derivatively all of the Debtor's claims and causes of action pursuant to Chapter 5 of the Bankruptcy Code, <u>other than</u> claims and causes of action against the CE Settlement Trust[2], or the Debtor's asbestos claimants or their attorneys (collectively, the "Other Avoidance Actions"[3]). In support of its limited objection and request for related relief (together, the "Response"), the Committee states as follows:

## INTRODUCTION

By this Response, the Committee seeks authority to pursue causes of action belonging to the Debtor except for causes of action against the CE Settlement Trust, asbestos claimants and asbestos claimants' attorneys (collectively, the "Asbestos Causes of Action"), either independently or jointly with Future Claimants' Representative David Austern. The Committee excludes the Asbestos Causes of Action from this request because the Committee acknowledges that those causes of action could result in allegations of conflict of interest against the Committee and its members. The relief requested by the Committee is appropriate for a number of reasons.

First, while a creditors' committee is the usual derivative plaintiff in Chapter 11, there is no direct authority for granting derivative standing to a future claimants' representative appointed pursuant to 11 U.S.C. § 524(g). This fact supports a grant of joint, if not exclusive derivative standing to the Committee and demonstrates that only by granting derivative standing to the Committee can the Court insure that the Other Avoidance Actions will be dismissed for

---

[1] The Committee believes that the relief sought in the Motion and this Response is properly addressed in the Debtor's bankruptcy case rather than in this Adversary Proceeding. However, because the Austern Motion was filed in the Adversary Proceeding, the Committee is filing the Response in both the main case and the Adversary Proceeding.

[2] For convenience, capitalized terms shall have the same meanings as set forth in the Motion.

{D0035993:1 }   - 2 -

lack of standing after the statute of limitations has expired.[4]  Second, the Committee believes that the resolution of the Other Avoidance Actions is vitally important to the outcome of this case and that those causes of action should not be pursued without <u>direct</u> input from the Committee given its central role to the case and given the fact that, unlike Mr. Austern, the Committee represents the interests of actual creditors of the Debtor rather than non-existent prospective creditors.  It is just this sort of reasoning that has justified the appointment of asbestos claimants' committees to pursue avoidance actions in the Chapter 11 bankruptcy cases of G-1 Holdings, Inc., The Babcock & Wilcox Company and W. R. Grace & Co.  Third, to the extent the Committee takes on certain burdens of pursuing the Other Avoidance Actions, it will reduce costs to the estate because, unlike Mr. Austern, the Committee does not charge for its time spent on this case.  For these reasons, the Committee requests that it be given derivative standing along with Mr. Austern to pursue all of the Other Avoidance Actions.

Finally, the Committee notes that it is committed to negotiating tolling agreements rather than filing lawsuits, if possible, prior to the expiration of the statute of limitations.  While the Committee would not put off litigation indefinitely, the Committee is fully engaged in efforts to resolve issues raised by the Third Circuit's remand of the Debtor's plan confirmation order and the Committee would not discourage a negotiated resolution by filing lawsuits unnecessarily.  To that end, the Committee has raised the possibility of a tolling agreement with ABB's counsel and discussed the form of a tolling agreement with counsel to Mr. Austern.

---

[3] The Other Avoidance Actions consist principally but not exclusively of Chapter 5 avoidance actions against insiders of the Debtor, including its parent ABB, Inc., its indirect parent, ABB Ltd., a Swiss corporation that is the shareholder of ABB, Inc., and related entities (collectively, "ABB").

[4]    The Debtor has not explained why the Debtor is conflicted in the pursuit of the Asbestos Causes of Action and the Committee is not certain that a grant of standing to Mr. Austern to pursue the Asbestos Causes of Action will ultimately be held to be valid.  However, as set forth above, the Committee does not believe that it is the appropriate party to pursue the Asbestos Causes of Action.

      A.      **Under the Third Circuit's *en banc* decision in *Cybergenics*, the Court should grant the Committee authority <u>to derivatively pursue the Other Avoidance Actions.</u>**

Authorizing a future claimants' representative to pursue the estate's avoidance actions is a highly unusual procedure, while granting such authorization to a creditors' committee is now a well-established solution to a recurring bankruptcy problem. The Third Circuit Court of Appeals has held unequivocally that this Court may authorize the Committee to pursue the Other Avoidance Actions derivatively for the benefit of the Debtor's estate. *Official Comte. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567-80 (3rd Cir. *en banc* 2003). "We believe that the ability to confer derivative standing upon creditors' committees is a straightforward application of bankruptcy courts' equitable powers." *Id.* at 568. In a comprehensive analysis of the derivative standing of creditors' committees, the Third Circuit, sitting *en banc*, found such authorization appropriate where debtors disclaim or would be conflicted in exercising their fiduciary role to assert valuable avoidance actions for the benefit of their creditors:

> This [debtor-in-possession] situation gives rise to the proverbial problem of the fox guarding the henhouse. If no trustee is appointed, the debtor – really, the debtor's management – bears a fiduciary duty to avoid [voidable] transfers that it itself made. One suspects that if managers can devise any opportunity to avoid bringing a claim that would amount to reputational self-immolation, they will seize it. For that reason, courts and commentators have acknowledged that the debtor-in-possession 'often acts under the influence of conflicts of interest.' … For example, a debtor may be unwilling to pursue claims against individuals or businesses, such as critical suppliers, with whom it has an ongoing relationship that it fears damaging.
>
>                                       \* \* \*
>
> The possibility of a derivative suit by a creditors' committee provides a critical safeguard against lax pursuit of avoidance actions. *Amicus* Law Professors explain that parties to bankruptcy workouts are typically sophisticated, and that they understand that their actions will likely be scrutinized after the fact. They also understand that, even though a debtor's management may be reluctant to pursue an avoidance action, a creditors' committee will not be so hesitant.

> Therefore, the mere threat of a creditors' committee suit is often a potent deterrent to overreaching by creditors and insiders. This deterrent effect remains important even after commencement of the bankruptcy case itself.

*Id.* at 573-74 (internal citations omitted). The Third Circuit could not be more clear in its holding that this Court has the equitable authority to approve the derivative prosecution of avoidance actions and that the default choice to receive derivative standing is the Committee.

In addition to finding support for its ruling in pre-Code practice and the underlying policies of Chapter 11, the Third Circuit found the derivative standing of creditors' committees consonant with Congressional intent as evidenced by the enactment of 11 U.S.C. §§ 1109(b), 1103(c)(5), and 503(b)(3)(B). *Id.* at 568-69 ("The end result of this equitable remedy – the estate's recovery of fraudulently transferred property – is precisely what Congress envisioned, and Code Sections 1109(b), 1103(c)(5), and 503(b)(3)(B) anticipate the court's means of achieving that result."). *Cybergenics* therefore provides strong support for the grant of derivative standing to the Committee to pursue the Other Avoidance Actions.

    **B.**    **The Debtor's understandable failure to pursue the Other Avoidance Actions warrants authorization for <u>the Committee to pursue those actions derivatively.</u>**

This case presents the prototype circumstances that warrant a court to authorize a committee to pursue avoidance actions. The Other Avoidance Actions include actions that would be directed primarily at the Debtor's parent entities and corporate family, and that the Committee's professionals have valued at as much as $1.8 billion. It is neither a secret nor a surprise that the Debtor does not intend to prosecute these actions. First, the Debtor and ABB's proposed Plan of Reorganization (the "Plan") sought to waive all avoidance actions, including the Other Avoidance Actions. Furthermore, despite the fact that the Plan has not been confirmed and the limitations period for bringing avoidance actions under 11 U.S.C. § 546 will expire in one month, the Debtor, jointly with some of the main targets of the Other Avoidance Actions,

NGEDOCS: 017213.0040:1118446.1

filed the Austern Motion without mentioning the Other Avoidance Actions. The Debtor's reluctance is further evidenced by the decision to bring the Austern Motion under the caption of the Trinchese adversary proceeding, which only concerned purported voidable transfers related to the CE Settlement Trust, but not avoidance actions against the ABB corporate family.

Even if the Debtor were directed to pursue the Other Avoidance Actions, it is unrealistic to expect the Debtor's management to vigorously pursue actions that would have serious impact upon the financial condition of its controlling entities and corporate family. The Third Circuit found that there was nothing to be gained from ordering a reluctant debtor to bring suit against insiders, and stated:

> [T]his solution is not realistic – given management's sometimes severe conflicts of interest, a court order to file an avoidance action would frequently amount to instructing management to sue itself. To put it mildly, that is unlikely to result in vigorous prosecution of the claim.

*Id.* at 578. Where the Debtor clearly has no intention of bringing the Other Avoidance Actions and would be impaired from effectively doing so by an inherent conflict of interest, the Committee should be authorized to pursue the Other Avoidance Actions derivatively.

### C. There is no basis to preclude both the Committee and Mr. Austern from pursuing avoidance actions.

Consonant with the relief requested herein, the Committee objects to the Austern Motion insofar as the Committee wishes to preserve its right to pursue the Other Avoidance Actions along with Mr. Austern or instead of Mr. Austern. While the Committee does not object to the appointment of Mr. Austern to pursue the Asbestos Causes of Action, the Committee disputes the argument advanced in the Austern Motion that only one party should be appointed to bring all avoidance actions. *See* Austern Motion at ¶¶ 6 and 30.

The Plan Proponents argue that the appointment of Mr. Austern to prosecute all avoidance actions will reduce transaction costs and prevent wasteful piecemeal litigation and the

possibility of inconsistent judgments. *Id.* This argument is undermined, however, by both the prevailing practice in most large bankruptcy cases across the country, and the significant costs that the estate would incur to pay Mr. Austern's $450 hourly fee in connection with the Other Avoidance Actions. To the extent that the Committee shoulders the burden of pursuing any of the Other Avoidance Actions and Mr. Austern takes a secondary role, there will be a direct monetary benefit to the Debtor's estate. Moreover, the purported cost savings gained by excluding the Committee is illusory as the Committee has a duty to take an active role in these actions regardless of whether the Committee is granted derivative standing. Finally, the Asbestos Causes of Action and the Other Avoidance Actions are factually distinct, so there is no obvious economy gained by placing a single party in charge of all of those actions.

In *Cybergenics*, the Third Circuit favored the appointment of a creditors' committee over a paid representative to pursue avoidance actions, in part to contain costs:

> One concern is that, like a trustee, an examiner would incur direct costs through its fees, so to that extent this remedy is inferior to the alternative of derivative suit by a creditors' committee.

*Cybergenics*, 330 F.3d at 578. The Committee therefore submits that the authorization of the Committee to pursue the Other Avoidance Actions derivatively is in the bests interests of the Debtor's estate, and further that the Plan Proponents have articulated no countervailing benefit to the appointment of Mr. Austern to pursue all avoidance actions, including the Other Avoidance Actions, to the exclusion of derivative standing for the Committee.

## **CONCLUSION**

For the reasons set forth above, the Official Committee of Unsecured Creditors of Combustion Engineering, Inc. respectfully requests that the Court enter an order (a) authorizing the Committee to pursue the Other Avoidance Actions derivatively, (b) denying the relief sought in the Motion to appoint David Austern as the sole representative of the Debtor's estate with

authority to pursue the Debtor's avoidance actions; and (c) granting such other relief as this Court deems just.

                Respectfully submitted,

                THE OFFICIAL COMMITTEE
                OF UNSECURED CREDITORS OF
                COMBUSTION ENGINEERING, INC.

                By:/S/ Kathleen Campbell
                      One of its attorneys

Frances Gecker (Illinois ARDC #6198450)
Joseph D. Frank (Illinois ARDC #6216085)
Micah R. Krohn (Illinois ARDC #6217264)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois  60602
Telephone:   (312) 269-8000
Facsimile:   (312) 269-1747

       and

Marla R. Eskin (No. 2989)
Kathleen Campbell (No. 4229)
CAMPBELL & LEVINE, LLC
800 North King Street, Suite 300
Wilmington, Delaware  19801
Telephone:   (302) 426-1900
Facsimile:   (302) 426-9947

Dated: January 18, 2005