## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMBUSTION ENGINEERING, INC. | ) | Case No. 03-10495 (JKF) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## REPORT TO THE COURT BY DAVID T. AUSTERN,
## AS REPRESENTATIVE OF THE BANKRUPTCY ESTATE,
## WITH RESPECT TO CERTAIN AVOIDANCE ACTIONS

David T. Austern, in his capacity as the representative of the Bankruptcy Estate of Combustion Engineering, Inc. ("CE"), by counsel, is filing this Report to advise the Court and the parties of the status of certain matters addressed by the Court at the hearing on January 27, 2005 (the "January 27 Hearing"). At that hearing, the Court considered the Plan Proponent's Motion to Appoint David Austern as Party in Interest Authorized to Pursue Avoidance Actions on Behalf of the Bankruptcy Estate [Docket No. 1918]. The Court directed Mr. Austern, along with other parties, to pursue certain avoidance actions on behalf of CE, and established certain deadlines with respect to such matters. This Report updates the Court on actions taken since the January 27 Hearing, in anticipation of the further hearing before the Court on February 10, 2005.

At the January 27 hearing, the Debtor identified four categories of potential avoidance actions:

1. Claims arising out of the transfers of assets by CE to the CE Settlement Trust (the "Trust"), and the distributions made by the Trust to or for the benefit of certain law firms and asbestos claimants with respect to asbestos-related personal injury claims (collectively, the "Trust Claims");

2.      Claims arising out of the transfers of funds by CE with respect to asbestos-related

personal injury claims to or for the benefit of certain law firms and asbestos

claimants, which transfers were made within the preference period and "outside"

of the Trust (collectively, the "Non-Trust Claims");

3.      Claims arising out of transactions between or among CE, ABB Ltd. and its

affiliates (collectively "ABB"), and Alstom and its affiliates (collectively,

"Alstom") (collectively, the "Insider Claims"); and

4.      Other, more traditional preference claims involving payments made by CE during

the preference period to its vendors, suppliers, service providers and others

(collectively, the "Trade Preference Claims").

We start below with a discussion of the status of tolling agreements, and then address the status

of each category of avoidance actions.

## I.      <u>TOLLING AGREEMENTS</u>

As discussed with the Court at the January 27 Hearing, one of Mr. Austern's objectives

was to negotiate tolling agreements (i) with ABB and Alstom, with respect to the Insider Claims,

and (ii) with the Law Firms (defined below) that had received funds from the Trust and/or from

CE, for themselves and their clients. These efforts have been successful as to ABB and Alstom,

and we are starting to receive executed tolling agreements from Law Firms.

### A.      <u>ABB/ Alstom</u>

Since the January 27 Hearing, Mr. Austern, the Official Committee of Unsecured

Creditors (the "Committee"), ABB and Alstom negotiated, and all have now executed, that

certain Tolling Agreement of Applicable Statutes of Limitations With Respect to Potential

Claims (the "ABB/Alstom Tolling Agreement"). As directed by the Court, ABB executed and

filed a tolling agreement on February 1, 2005 [Docket No. 1961]. The ABB/Alstom Tolling

Agreement was modified slightly thereafter,[1] and then signed by Mr. Austern, the Committee

and Alstom, and by ABB (again). The fully executed ABB/Alstom Tolling Agreement was filed

with the Court on February 7, 2005 [Docket No. 1975], and a copy (without Schedules A, B or C

thereto) is attached as Exhibit A for the Court's convenience. In Mr. Austern's view, the

execution and delivery of the ABB/Alstom Tolling Agreement precludes the necessity to file suit

with respect to the Insider Claims at this time.

### B.    The Plaintiffs' Law Firms and Their Clients

Immediately after the January 27 hearing, counsel for Mr. Austern circulated to counsel

for the Committee and for Certain Cancer Claimants a proposed tolling agreement for use by

those law firms representing asbestos personal injury claimants which had received distributions

from the Trust or had received payments directly from CE during the preference period (the

"Law Firms").[2] Based upon comments received on the initial form of the tolling agreement

circulated, counsel for Mr. Austern revised the form of tolling agreement to circulate to all Law

Firms.

Mr. Austern asked CE and its claims agent, Connecticut Valley Claims Services

Company ("Connecticut Valley"), to provide the names and addresses of the Law Firms. The

information Connecticut Valley provided identified 137 addresses for Law Firms which received

funds directly from the Trust, and an additional 27 addresses for Law Firms which received

funds from CE during the preference period.[3]

---

[1]    The modifications corrected a typographical error and inserted other language clarifications.

[2]    A number of Law Firms received payments both from the Trust and outside the Trust.

[3]    Connecticut Valley identified certain Law Firms with more than one address and contact person.

By letter dated February 2, 2005, counsel for Mr. Austern transmitted the proposed form of tolling agreement to the Law Firms representing claimants who received distributions from the Trust (137 addressees), and from CE during the preference period other than through the Trust (27 addressees). Copies of counsel's transmittal letter and the form of tolling agreement are attached as Exhibit B.[4]   In order to abide by the Court's direction that all complaints be filed by February 15, 2005, counsel for Mr. Austern asked that executed tolling agreements be delivered no later than 10:00 a.m. on February 14, 2005. This deadline will provide time to process the agreements, and therefore, to the extent practicable, Mr. Austern will attempt to avoid filing complaints against Law Firms which have executed and delivered tolling agreements.

Mr. Austern also asked the Law Firms to execute tolling agreements on their clients' behalf, to the extent they were authorized to do so. To the extent a valid and enforceable tolling agreement is timely executed and delivered by or on behalf of a Law Firm's client, that individual will be excluded, by definition, from the class(es) of defendants the Court is being asked to certify, as described below. Thus, if class certification were granted, a tolling agreement as to a Law Firm's client would be "self-executing," and no claim would be asserted against any individual claimant who timely executes and delivers a valid and enforceable tolling agreement, or whose authorized representative does so on his or her behalf, for so long as such agreement remains in full force and effect.

---

[4]    Counsel's letter and the form of tolling agreement were sent by Federal Express or other overnight delivery service on February 2, 2005. Receipt was confirmed by mid-day on February 3, 2005 for all but 15 of the addressees. For those addressees, we located email addresses and forwarded the materials by email on February 3, 2005.

As of mid-day on Tuesday, February 8, counsel for Mr. Austern had received executed tolling agreements from the following Law Firms, for themselves and for the clients they identified:[5]

> Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, P.C.
> The Carlile Law Firm L.L.P.
> Dies, Dies & Henderson
> Donaldson and Black, P.A.
> James E. Herrick, *Pro Se*
> Kazan, McClain, Abrams, Fernandez, Lyons & Farrise
> Michie Hamlett Lowry Rasmussen & Tweel PLLC
> Motley Rice LLC
> Peirce, Raimond & Coulter
> Peter G. Angelos, a Professional Corporation
> Sieben Polk LaVerdiere & Dusich, P.A.
> Waters & Kraus, LLP
> Wysoker, Glassner, Weingartner, Gonzalez & Lockspeiser

## II.    **COMPLAINTS FILED OR TO BE FILED**

### A.    **"Trust Claims" – Category 1**

At the time of the January 27 Hearing, claims against those who directly or indirectly received funds from the Trust were already pending before the Court in the Trinchese Adversary (Ad. Pro. No. 03-50995). As directed by the Court at the January 27 Hearing, Mr. Austern has joined as a party plaintiff in the Trinchese Adversary, and he and Mrs. Trinchese will file their Amended Complaint as directed.[6]

The Trinchese adversary originally identified the recipients of funds from the Trust as "John and Jane Does," as their identities were then not known to the plaintiff. Since the January 27 Hearing, at the Court's direction, both the Trust and ABB provided certain data with respect

---

[5]    Not all executed tolling agreements we received contained a list of clients.

[6]    The Amended Complaint pleads certain causes actions asserted solely by Mr. Austern, certain causes of action asserted by Mr. Austern and Mrs. Trinchese jointly, and additional causes of action asserted solely by Mrs. Trinchese.

to such recipients. Based upon counsel for Ms. Trinchese's representation at the January 27

Hearing, the Court directed that an Amended Complaint naming all individual recipients of funds

from the Trust be filed by February 8, 2005. As Mrs. Trinchese explains, however, in her

Emergency Motion of Plaintiff, Francesca Trinchese, for Modification of January 27, 2005

Bench Order Regarding Amendment of Complaint [Docket No. 84], filed February 3, 2005 (the

"Emergency Motion"), when the data was received and analyzed, it became clear that naming

each individual, while physically possible, would not be an efficient way to proceed, as there

appear to be in excess of 130,000 claimants, and the data was in a form such as to make it

difficult actually to name each individual and provide all identifying information.

Accordingly, counsel for Mrs. Trinchese sought permission from the Court to proceed by

naming a defendant class, as set out in their Emergency Motion. Given, however, that the

Amended Complaint was directed to be filed by February 8, and the Emergency Motion is set to

be heard on February 10, the parties determined to proceed along two-tracks – structuring the

Amended Complaint as an action against, among others, a class of claimant defendants and, as

an alternative approach, naming all 130,000+ claimants (by listing them in a schedule attached to

the Amended Complaint). Mrs. Trinchese then determined, on the morning of February 8, not to

pursue claims against the individual recipients of funds from the Trust and their Law Firms at all.

In order to address these practical problems, the Amended Complaint names the

following defendants and causes of action asserted by Mr. Austern:

- the Trust and both of its Trustees;

- two individual claimants who received significant distributions, individually
  and as representatives of the class of defendants defined in the Amended
  Complaint as the Claimant Class;

- the over 130,000 individual claimants listed in a schedule who would be members of the Claimant Class, if the class were certified by the Court[7];

- two Law Firms which received significant distributions, individually and as representatives of the class of defendants defined in the Amended Complaint as the Law Firm Class;

- the over 130 Law Firms listed in a schedule that would be members of the Law Firm Class if the class were certified by the Court; and

- John and Jane Does.[8]

In this fashion, the Amended Complaint can proceed as a class action if the Court were to certify the classes, while the causes of action are preserved in the interim as a result of (i) the original action having been filed against John and Jane Does, (ii) the Court-ordered notices having been sent to all recipients of funds early in the case, and (iii) the known recipients now having been identified. Accordingly, Mr. Austern believes it is not critical that the Court consider and rule upon a motion to certify the Claimant Class or the Law Firms Class prior to February 15, 2005.[9]

### B.    "Non Trust Claims" – Category 2

Based upon the information provided by CE and Connecticut Valley, Mr. Austern (through counsel and CIBC) identified approximately $18.8 million transferred directly by CE during the preference period to claimants and their lawyers outside of the Trust. It appears that such payments were made to or for the benefit of approximately 27 Law Firms and over 1300

---

[7]    If class certification is denied, the over 130,000 claimants listed in the schedule would be potential defendants if individual adversaries are to be filed.

[8]    The Amended Complaint names John and Jane Does to preserve causes of action against those individuals and law firms who or which remain unknown, e.g., in the event the data provided by the Trust and ABB was not complete.

[9]    This is in contrast to the situation with respect to the Non-Trust Claims, as discussed in the following section of this Report, where no suit was on file prior to Mr. Austern's February 2, 2005 complaint, and no John or Jane Does were previously named. For that reason, Mr. Austern has sought class certification prior to the February 15 deadline with respect to the Non-Trust Claims.

individual claimants. The amounts allocated to individuals range as high as $1 million, while aggregate gross receipts by Law Firms range from a high of in excess of $4.3 million to a low of less than $50,000.

Rather than filing suit against over 1300 individuals, or filing a large number of individual suits, Mr. Austern sought to minimize the cost and disruption of one or more mass filings upon the Court, upon the parties in the case and, most importantly, upon the individual claimants. Accordingly, on February 2, 2005, [10] Mr. Austern filed suit against the individual claimants by identifying three individuals as class representatives, [11] and asking the Court to certify a class of defendants defined as:

> [A]ll individuals and representatives of individuals who, during the ninety days preceding the Petition Date, received any payment from CE, directly or indirectly, on account of any asbestos-related personal injury claim; excluding, however, (1) any such individual or representative who received payment solely from the CE Settlement Trust, and (2) any such individual who executes and delivers, or whose authorized representative acting on his or her behalf executes and delivers, to Austern, on or before February 15, 2005, a valid and enforceable agreement tolling all applicable statutes of limitations and other time periods for commencing actions, including the applicable time periods under 11 U.S.C. Sections 108(a) and 546(a)(1), for so long as such agreement remains in effect. [12]

The grounds for certifying this class of defendants and permitting the action to be maintained as a class action are set out in Mr. Austern's Memorandum in Support of Motion for Certification of the Defendants as a Class, which was filed in the Non-Trust Claims Adversary on February 2, 2005 [Docket No. 4].

---

[10]   The timing of filing of this suit was necessitated by Mr. Austern's desire to have the action proceed as an action against a defendant class, and by the Court's scheduling order, which provided for a hearing on the class certification motion on February 10, 2005.

[11]   Each of these individuals received a substantial payment in excess of $500,000.

[12]   See Complaint at ¶ 7, filed in Adversary Proceeding No. 05-50363 (JKF) (the "Non Trust Claims Adversary") [Docket No. 1]

With respect to the Law Firms which received funds outside of the Trust during the preference period, Mr. Austern has offered tolling agreements as described above. In light of the relatively small number of Law Firms involved, Mr. Austern did not believe it would be appropriate to proceed against such Law Firms as a defendant class. Accordingly, Mr. Austern will file a separate action against those Law Firms which have not executed and delivered tolling agreements by February 14, 2005 at 10:00 a.m. We are hopeful that all (optimally), or at least most, of the Law Firms that received payments outside of the Trust will execute and deliver tolling agreements prior to this deadline, and thus few, if any, lawsuits would have to be filed. Mr. Austern is prepared, however, to file suit against any and all of the Law Firms which received payments outside of the Trust and which do not timely execute and deliver tolling agreements.

C.     **"Insider Claims" – Category 3**

As noted above, the Insider Claims – those against ABB and/or Alstom – are tolled and no complaints need be filed as to those matters at this time.

D.     **"Trade Preference Claims" – Category 4**

This category consists of traditional preference claims, those against vendors, suppliers and service providers, including professionals acting on behalf of CE prior to the Petition Date. The Court assigned responsibility for examining these transactions and filing complaints, if any, jointly to Mr. Austern and the Committee.

CE's Amended Statement of Financial Affairs filed on March 29, 2003 [Docket No. 323] (the "SoFA") identifies a number of such transactions (identified as "Windsor Site Expenses"),

aggregating almost $1.8 million.[13]  In addition, based upon information provided by CE and

Connecticut Valley, of the $27.8 million CE identified in its SoFA as having been paid to

"Plaintiff and Defense Attorneys," see Exhibit C, approximately $18.8 million was paid by CE to

claimants and their lawyers on account of asbestos-related personal injury claims outside of the

Trust (i.e., the Non-Trust Claims), and the remaining $9 million was paid to law firms

representing CE in defense of such claims.  For purposes of this preference analysis, the $9

million is viewed as part of the "Trade Preference Claims," along with the $1.8 million Windsor

Site Expenses.

     With respect to Trade Preference Claims, Mr. Austern asked his financial advisor, CIBC

World Markets, Inc. ("CIBC"), to review the SoFA and other data being provided by CE in

response to CIBC's requests, and to evaluate potential claims and potential defenses (e.g.,

ordinary course and new value).  Counsel for Mr. Austern and CIBC will share the results of

their analyses with counsel for the Committee and the Committee's financial advisors, L.

Tersigni Consulting, Inc.  We anticipate working with the Committee to conclude which, if any,

transfers in this category merit further pursuit, and to file complaints, if any, by February 15.

*       *       *

---

[13]  CE's SoFA, in the summary page to the Attachment for #3.a., identifies the following
amounts:

| | |
|---|---|
| CE Settlement Trust | $106,171.354 |
| Plaintiff and Defense Attorneys | $ 27,825.043 |
| Windsor Site Expenses | $  1,784,460 |

A copy of this summary page from the attachment to CE's SoFA is attached to this Report
as Exhibit C.

Mr. Austern respectfully suggests that the actions taken and to be taken, as described above, and the granting of the relief sought from the Court, will preserve the avoidance actions for the benefit of the Estate as contemplated by the Court at the January 27 Hearing.

We will be available to answer questions from the Court and to address any further matters the Court may wish at the hearing on February 10, 2005.

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

_____
John C. Phillips, Jr., Esquire (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)

Roger Frankel, admitted *pro hac vice*
Richard H. Wyron, admitted *pro hac vice*
Michael J. Lichtenstein, *pro hac vice* pending
Swidler Berlin LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
(202) 424-7500

Dated: February 8, 2005          Counsel to David T. Austern, in his capacity as
                                 the Representative of the Bankruptcy Estate of
                                 Combustion Engineering, Inc.

11

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| COMBUSTION ENGINEERING, INC., | ) | |
| | ) | Case No. 03-10495 (JKF) |
| Debtor. | ) | [Re Docket No. 1961] |

## <u>AMENDED NOTICE OF FILING</u>

1.    On February 1, 2005, the Plan Proponents filed a Notice of Filing [Docket No.

1961] of a tolling agreement executed by ABB on February 1, 2005 (the "Tolling Agreement").

2.    Attached hereto is a fully executed version of the Tolling Agreement.

Dated: February 7, 2005

Respectfully submitted,

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Jeffrey N. Rich (Bar No. JR 7183)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 536-4907

    and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Curtis A. Hehn (Bar No. 4264)
Michael P. Migliore (Bar No. 4331)
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Counsel for Debtor and Debtor-in-Possession

DOCS_DE:105257 2

## TOLLING AGREEMENT OF APPLICABLE STATUTES OF LIMITATIONS WITH RESPECT TO POTENTIAL CLAIMS

The ABB Companies, as defined and identified on <u>Schedule A</u> attached hereto (each of which, whether one or more, shall individually and collectively be hereinafter called "<u>ABB</u>"), the Alstom Companies, as defined and identified on <u>Schedule B</u> attached hereto (each of which, whether one or more, shall individually and collectively be hereinafter called "<u>Alstom</u>," and together with ABB, the "<u>Tolling Parties</u>") and the Bankruptcy Estate of Combustion Engineering, Inc. (the "Estate"), by the Official Committee of Unsecured Creditors (the "Committee") and David Austern ("Austern"), in their capacities as the representatives of the Estate appointed by the Bankruptcy Court to bring avoidance actions on behalf of the Estate pursuant to the terms of the Appointment Order (as defined below), do hereby agree to this Tolling Agreement of Applicable Statutes of Limitations ("<u>Tolling Agreement</u>") and stipulate as follows  Capitalized terms utilized herein without definition shall have the meanings ascribed to them in the Glossary of Terms for the Plan Documents Pursuant to the Plan of Reorganization of Combustion Engineering, Inc. as Modified Through June 4, 2003, attached as <u>Exhibit A</u> to the Disclosure Statement.

### RECITALS:

WHEREAS, on February 17, 2003, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and

WHEREAS, the Debtor continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

1

WHEREAS, in open Court on January 27, 2005, the Bankruptcy Court ordered the appointment of the Committee and Austern as joint representatives of the Estate for purposes of, among other things, executing this Tolling Agreement (the "Appointment Order"); and

WHEREAS, ABB, Alstom, and the Estate (collectively, the "Parties," and each a "Party") seek to avoid the cost and expense of litigation at this time and seek to preserve all of their respective legal rights without allowing any applicable statute of limitations or other time periods within which any actions must be brought to expire and without acknowledging in any way that valid claims, causes of action or defenses thereto exist or do not exist.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed and consented to by the Parties hereto as follows:

## AGREEMENT:

1.    The running of any applicable statute of limitations or time-based defenses in the nature of a statute of limitations defense, including laches and other equitable defenses, in respect of any claim or cause of action against the Tolling Parties which may be asserted by the Estate, the Committee, Austern or any other representative of the Estate, including without limitation any claims to avoid any preferences, fraudulent transfers or other voidable transfers, or to otherwise recover assets or damages for the benefit of the Bankruptcy Estate, whether arising under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code, under any similar provisions of any state's laws or otherwise ("Claims"), and any defenses, setoffs and recoupments by the Tolling Parties to such Claims ("Defenses"), are hereby tolled.    Without limiting the generality of the foregoing, the Tolling Parties acknowledge that they intend this Tolling Agreement to toll the time periods specified in sections 108(a) and 546(a)(1)(A) of the Bankruptcy Code.

2

2.    The assertion of any Claims by the Estate, the Committee, Austern or any other representative of the Estate that may be timely asserted or commenced as of the date of this Tolling Agreement shall not be barred by any statute of limitations or time-based defense in the nature of a statute of limitations defense, including laches and other equitable defenses, while the provisions of this Tolling Agreement are in effect. Any Claim that is barred as of the date hereof shall continue to be so barred.

3.    The provisions of this Tolling Agreement shall extend up to the earlier to occur of (i) the Effective Date or (ii) sixty days following the date that written notice is delivered by any one of the Tolling Parties in accordance with Paragraph 16 below (the "Tolled Period").

4.    Each of the Parties hereto acknowledges that it has read all of the terms of this Tolling Agreement and enters into those terms voluntarily and without duress.

5.    This Tolling Agreement contains the entire agreement between the Parties hereto regarding the provisions set forth above and may only be modified in a writing signed by the Parties or their duly appointed agents.

6.    This Tolling Agreement is not to be construed, and is not intended, as an admission or suggestion that jurisdiction over any claim or person, or any valid claim or cause of action, exists against any Party or that any valid defense exists to any such claim or cause of action.

7.    Except as expressly set forth in this Tolling Agreement, each of the Parties reserves all rights and remedies that it may have against the other.

8.    This Tolling Agreement shall be deemed to have been jointly drafted by the Parties hereto, and in constructing and interpreting this Tolling Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other

3

provision of this Tolling Agreement, or this Tolling Agreement as a whole, was purportedly prepared or requested by such Party.

9.    This Tolling Agreement and the rights and obligations of the Parties hereunder shall be governed by, and construed and interpreted with, the laws of the State of Delaware.

10.    The Parties hereto agree that the mere fact that they entered into this Tolling Agreement has no effect on the issue of whether jurisdiction over any of the ABB Companies or any of the Alstom Companies exists in the United States. The ABB Companies and the Alstom Companies reserve their rights to contend that there is no jurisdiction over them in the United States (other than any specific Plan provisions making ABB Ltd. subject to the jurisdiction of the U.S. Courts for the limited purpose of enforcing ABB Ltd.'s obligations under a confirmed Plan).

11.    This Tolling Agreement shall be binding upon, and inure to the benefit of, the successors, representatives, assigns and heirs of the Parties hereto.

12.    ABB Ltd. hereby represents that the execution, delivery and performance by the ABB Companies of this Tolling Agreement is within the ABB Companies' powers, and has been duly authorized by all necessary action on the part of the ABB Companies, and does not and will not (i) violate the ABB Companies' organizational documents, or (ii) constitute a breach of, or default under, any agreement, undertaking or instrument to which any ABB Company is a party or by which it may be affected. ABB Ltd. hereby further represents that this Tolling Agreement, upon execution and delivery, will be a legal, valid and binding obligation of the ABB Companies, enforceable against each of them in accordance with its terms. ABB Ltd. and

4

ABB Holdings Inc. further represent that ABB Holdings Inc. is the successor by merger to Asea Brown Boveri, Inc., a Delaware corporation.

13.     Alstom hereby represents that the execution, delivery and performance by the Alstom Companies of this Tolling Agreement is within the Alstom Companies' powers, and has been duly authorized by all necessary action on the part of the Alstom Companies, and does not and will not (i) violate the Alstom Companies' organizational documents, or (ii) constitute a breach of, or default under, any agreement, undertaking or instrument to which any Alstom Company is a party or by which it may be affected. Alstom hereby further represents that this Tolling Agreement, upon execution and delivery, will be a legal, valid and binding obligation of the Alstom Companies, enforceable against each of them in accordance with its terms.

14.     Each of the Tolling Parties hereby covenants and agrees that it shall not assert as a defense the unenforceability of this Tolling Agreement or any provision thereof in any action or proceeding to enforce the rights and obligations of the Parties hereunder.

15.     The Tolling Parties agree that entry into this Tolling Agreement has no effect on the issue of and shall not be deemed to constitute an admission as to when any applicable statute of limitations or time-based defenses that are subject to this Tolling Agreement began to run with respect to any Claims or as to whether any Claims would be barred by any applicable statute of limitations or time-based defense but for this Tolling Agreement.

16.     Any notice of termination given under Paragraph 3 hereunder must be in writing and will be deemed to be delivered, if personally delivered or if delivered by facsimile or by reputable overnight courier service (charges prepaid), when actually received by the party to whom notice is sent; *provided that* to be effective, any notice to given under Paragraph 3 hereunder must be given to all the parties listed on Schedule C attached hereto.

5

17.    This Tolling Agreement may be executed in counterparts and all executed counterparts taken together shall constitute one document.

18.    Except as otherwise expressly provided herein, the use of the singular of any word shall also include the plural and the use of the plural shall also include the singular.

6

**IN WITNESS WHEREOF,** the Parties have duly executed this Tolling Agreement as of the ____ day of February, 2005.

> **ABB Ltd,** a company organized under the laws of Switzerland, on behalf of itself and the ABB Companies as defined on <u>Schedule A</u> hereto
>
> By: _John Donley_
>
> Name: _JOHN DONLEY_
>
> Title: _Counsel_
>
> **ABB Holdings Inc.,** a Delaware corporation
>
> By: _John Donley_
>
> Name: _JOHN DONLEY_
>
> Title: _Counsel_
>
>
> **Alstom,** a company organized under the laws of France, on behalf of itself and the Alstom Companies as defined on <u>Schedule B</u> hereto
>
> By: _____
>
> Name: _____
>
> Title: _____
>
>
> **Alstom Power Inc.,** a Delaware corporation
>
> By: _____
>
> Name: _____
>
> Title: _____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

7

**IN WITNESS WHEREOF,** the Parties have duly executed this Tolling Agreement as of the _____ day of February, 2005.

**ABB Ltd,** a company organized under the laws of Switzerland, on behalf of itself and the ABB Companies as defined on Schedule A hereto

By: _____

Name: _____

Title: _____

**ABB Holdings Inc.,** a Delaware corporation

By: _____

Name: _____

Title: _____

**Alstom,** a company organized under the laws of France, on behalf of itself and the Alstom Companies as defined on Schedule B hereto

By: _____

Name: DONNA VITTER

Title: GENERAL COUNSEL

**Alstom Power Inc.,** a Delaware corporation

By: _____

Name: _____

Title: _____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

7

IN WITNESS WHEREOF, the Parties have duly executed this Tolling Agreement as of the _____ day of February, 2005.

ABB Ltd, a company organized under the laws of Switzerland, on behalf of itself and the ABB Companies as defined on Schedule A hereto

By: _____

Name: _____

Title: _____

ABB Holdings Inc., a Delaware corporation

By: _____

Name: _____

Title: _____

Alstom, a company organized under the laws of France, on behalf of itself and the Alstom Companies as defined on Schedule B hereto

By: _____

Name: _____

Title: _____

Alstom Power Inc., a Delaware corporation

By: _____

Name: _Thomas E. Liggett_____

Title: _Vice President_____

[SIGNATURES CONTINUED ON NEXT PAGE]

7

David Austern, in his capacity as the
representative of the Bankruptcy Estate pursuant
to the Appointment Order

The Official Committee of Unsecured Creditors,
in its capacity as the representative of the Estate
pursuant to the Appointment Order

By:

Its Authorized Representative

8

# EXHIBIT B

# SWIDLER BERLIN LLP

The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C. 20007-5116
Phone 202.424.7500
Fax 202.424.7647
www.swidlaw.com

February 2, 2005

***VIA FEDERAL EXPRESS***

To the Law Firms Which Received Payments
From Combustion Engineering, Inc. On Or
Within The Ninety Days Before The Filing Of Its
Chapter 11 Case

Re: Combustion Engineering, Inc. ("CE")

As you may know, at a hearing on January 27, 2005, the United States Bankruptcy Court for the District of Delaware (Fitzgerald, J.) appointed our client, David T. Austern, along with certain other parties, as the representative of the Bankruptcy Estate of CE, subject to further order of the Court, for the purpose of preserving certain of CE's causes of action, including actions seeking to set aside preferential transfers made on or within the 90 days before CE filed its Chapter 11 case.

The Bankruptcy Court authorized various representatives of the Bankruptcy Estate to pursue various claims in light of the impending deadlines under Sections 108(a) and 546(a)(1) of the Bankruptcy Code, which may require that such actions be filed within two years after the commencement of the Chapter 11 case. Since CE filed its Chapter 11 case on February 17, 2003, that two-year period, unless tolled, would expire by February 17, 2005. The Bankruptcy Court authorized Mr. Austern, along with others, to file actions relating to payments made by CE to settle asbestos-related claims. At the January 27th hearing, the Bankruptcy Court directed, among other things, that (1) any action seeking recovery of payments made outside of the CE Settlement Trust for which certification would be sought as a class action must be filed by February 1, 2005; (2) in the existing Trinchese action, which challenges payments made under the CE Settlement Trust, an amended complaint must be filed by February 8, 2005; and (3) all other actions must be filed not later than February 15, 2005. The Bankruptcy Court further ordered that, upon filing, all such actions would be stayed, and no summons would issue, pending further order of the Court.

As directed by the Bankruptcy Court, on behalf of CE's Bankruptcy Estate, Mr. Austern filed, on February 1, a class action against claimants who received funds outside of the CE Settlement Trust during the preference period. This class action defines the class of defendants as excluding those individuals who execute and deliver valid and enforceable tolling agreements, or whose authorized representatives execute and deliver such agreements on their behalf, on or before February 15, 2005. As directed by the Bankruptcy Court, absent the parties' agreement to toll the relevant time periods, Mr. Austern is prepared to file further actions on behalf of CE's Bankruptcy Estate, by the deadlines established by the Court, against law firms and other parties which received

SWIDLER BERLIN LLP

February 2, 2005
Page 2

payments, whether such payments were received under the CE Settlement Trust or outside of the Trust.

We believe that the Court's objective is to permit preservation of these causes of action rather than permitting statutes of limitation to run, so that the status quo is maintained while CE determines whether it can propose a consensual plan of reorganization, in light of the recent decision by the United States Court of Appeals for the Third Circuit.

As an alternative to filing further adversary proceedings against parties which received payments during the preference period, Mr. Austern proposes that the parties enter into agreements tolling the running of the applicable time period. The form of tolling agreement is enclosed with this letter. This form of tolling agreement applies whether you and your clients received funds under the CE Settlement Trust, outside of the Trust, or both.

If you are willing to toll the applicable periods for your firm and for your clients who received such payments, without admissions by any party, please (1) execute and date the original tolling agreement, (2) attach as Exhibit A the list of clients on whose behalf you are authorized to execute the tolling agreement, and (3) return the executed original by overnight courier or other means to:

> CE Tolling Agreements
> c/o Michael J. Lichtenstein, Esq.
> Swidler Berlin LLP
> 3000 K Street, N.W., Suite 300
> Washington, DC  20007-5116

In order to comply with the Bankruptcy Court's directive that all complaints be filed not later than February 15, 2005, we must receive properly executed tolling agreements by 10:00 a.m. on Monday, February 14, 2005, or we will proceed with filing additional suits in accordance with the Bankruptcy Court's directives.

The timely execution of tolling agreements or the filing of lawsuits is now mandated by the Bankruptcy Code, the Bankruptcy Court and the need to preserve the status quo pending further proceedings. If you have any questions, please contact Michael Lichtenstein at (202) 424-7708 or by email mjlichtenstein@swidlaw.com. We appreciate your cooperation.

Very truly yours,

SWIDLER BERLIN LLP

By:  _____
Roger Frankel
Richard H. Wyron
Michael J. Lichtenstein

Enclosure

SWIDLER BERLIN LLP

February 2, 2005
Page 3


Copies to:    Jeffrey N. Rich, Esq.
                  Counsel for Combustion Engineering
              Joseph D. Frank, Esq.
                  Counsel for the Official Committee of
                  Unsecured Creditors
              Elihu Inselbuch, Esq.
                  Counsel for the Official Committee of
                      Unsecured Creditors
              Elizabeth Magner, Esq.
                  Counsel for Certain Cancer Claimants
              Natalie D. Ramsey, Esq.
                  Counsel for Certain Cancer Claimants
              Sander L. Esserman, Esq.
                  Counsel for Certain Law Firms

## TOLLING AGREEMENT OF APPLICABLE STATUTES OF
## LIMITATIONS WITH RESPECT TO POTENTIAL CLAIMS

_____ (the "Law Firm"), on behalf of itself and the Law Firm Clients, as defined and identified on Exhibit A attached hereto (each of which, whether one or more, shall individually and collectively be hereinafter called the "Law Firm Clients", and together with the Law Firm, the "Tolling Parties") and David T. Austern, in his capacity as the representative of the Bankruptcy Estate appointed by the Bankruptcy Court to bring avoidance actions on behalf of the Bankruptcy Estate, pursuant to the terms of the Appointment Order (as defined below) ("Austern"), do hereby agree to this Tolling Agreement of Applicable Statutes of Limitations ("Tolling Agreement") and stipulate as follows.  Capitalized terms utilized herein without definition shall have the meanings ascribed to them in the Glossary of Terms for the Plan Documents Pursuant to the Plan of Reorganization of Combustion Engineering, Inc. as Modified Through June 4, 2003, attached as Exhibit A to the Disclosure Statement.

### RECITALS:

WHEREAS, on February 17, 2003, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and

WHEREAS, the Debtor continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, Austern contends that the Tolling Parties received direct or indirect payments from or on behalf of Combustion Engineering, Inc. prior to the Petition Date to settle asbestos-related personal injury claims; and

WHEREAS, Law Firm contends that neither it nor the Law Firm Clients received any direct or indirect payments from or on behalf of Combustion Engineering, Inc. prior to the Petition Date which are subject to avoidances; and

WHEREAS, in open Court on January 27, 2005, the Bankruptcy Court appointed Austern to pursue avoidance actions as the representative of the Bankruptcy Estate, subject to further order of the Court (the "Appointment Order"); and

WHEREAS, the Tolling Parties and Austern (collectively, the "Parties," and each a "Party") seek to avoid the cost and expense of litigation at this time and seek to preserve all of their respective legal rights without allowing any applicable statute of limitations or other time periods within which any actions must be brought to expire and without acknowledging in any way that valid claims, causes of action or defenses thereto exist or do not exist.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed and consented to by the Parties hereto as follows:

## AGREEMENT:

1.    The running of any applicable statute of limitations or time-based defenses in respect of any claim or cause of action against each of the Tolling Parties which may be asserted by the Bankruptcy Estate, Austern or any other representative of the Bankruptcy Estate, including without limitation any claims to avoid any preferences, fraudulent transfers or other voidable transfers, or to otherwise recover assets or damages for the benefit of the Bankruptcy Estate, whether arising under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code, under any similar provisions of any state's laws or otherwise ("Claims"), and any defenses and setoffs by the Tolling Parties to such Claims ("Defenses"), are hereby tolled.  Without limiting the generality of the foregoing, the Tolling Parties acknowledge that they intend this Tolling

-2-

Agreement to toll the time periods specified in sections 108(a) and 546(a)(1)(A) of the Bankruptcy Code.

2.      The assertion of any Claims by the Bankruptcy Estate, Austern or any other representative of the Bankruptcy Estate that may be timely asserted or commenced as of the date of this Tolling Agreement shall not be barred by any statute of limitations or time-based defense while the provisions of this Tolling Agreement are in effect.

3.      The provisions of this Tolling Agreement shall extend up to the earlier to occur of (i) the Effective Date or (ii) sixty days following the date that written notice is delivered by the Law Firm or any of the Law Firm Clients (as to such Law Firm or Law Firm Client or Clients only) in accordance with Paragraph 13 below (the "Tolled Period").

4.      Each of the Parties hereto acknowledges that it has read all of the terms of this Tolling Agreement and enters into those terms voluntarily and without duress.

5.      This Tolling Agreement contains the entire agreement between the Parties hereto regarding the provisions set forth above and may only be modified in a writing signed by the Parties or their duly appointed agents.

6.      This Tolling Agreement is not to be construed, and is not intended, as an admission or suggestion that any valid claim or cause of action exists against the Law Firm or Law Firm Clients, or that any valid defense exists to any such claim or cause of action alleged by Austern.

7.      Except as expressly set forth in this Tolling Agreement, each of the Parties reserves all rights and remedies that it may have against the other.

8.      This Tolling Agreement shall be deemed to have been jointly drafted by the Parties hereto, and in constructing and interpreting this Tolling Agreement, no provision shall

be construed and interpreted for or against any of the Parties because such provision or any other provision of this Tolling Agreement, or this Tolling Agreement as a whole, was purportedly prepared or requested by such Party.

     9.    This Tolling Agreement and the rights and obligations of the Parties hereunder shall be governed by, and construed and interpreted with, the laws of the State of Delaware.

     10.    This Tolling Agreement shall be binding upon, and inure to the benefit of, the successors, representatives, assigns and heirs of the Parties hereto.

     11.    The Law Firm hereby represents that the execution, delivery and performance by the Law Firm, for itself and on behalf of the Law Firm Clients, of this Tolling Agreement is within the Tolling Parties' powers, and has been duly authorized by all necessary action on the part of the Tolling Parties. The Law Firm further represents that this Tolling Agreement, upon execution and delivery by the Law Firm, will be the legal, valid and binding obligation of the Tolling Parties, enforceable against each of them in accordance with its terms.

     12.    The Law Firm hereby covenants and agrees on behalf of the Tolling Parties that none of the Tolling Parties shall assert as a defense the unenforceability of any provision of this Tolling Agreement in any action or proceeding to enforce the rights and obligations of the Parties hereunder.

     13.    Any notice given under Paragraph 3 hereunder must be in writing and will be deemed to be delivered if personally delivered, or if delivered by facsimile or by reputable overnight courier service (charges prepaid), when actually received by the party to whom notice is sent; *provided that* to be effective, any notice to given under Paragraph 3 hereunder must be given to all the parties listed on the Schedule of Notice Parties attached hereto.

14. This Tolling Agreement may be executed in counterparts and all executed counterparts taken together shall constitute one document.

15. Except as otherwise expressly provided herein, the use of the singular of any word shall also include the plural and the use of the plural shall also include the singular.

**IN WITNESS WHEREOF**, the Law Firm executes this Tolling Agreement on behalf of itself and the Law Firm Clients listed on Exhibit A attached hereto, and Austern executes this Tolling Agreement on behalf of the Bankruptcy Estate.


_____
Law Firm:
By Authorized Partner:


_____
Date



_____
David T. Austern, in his capacity as the
representative of the Bankruptcy Estate pursuant
to the Appointment Order


_____
Date

-5-

## SCHEDULE OF NOTICE PARTIES

1.      David T. Austern
        c/o Claims Resolution Management Corporation
        3110 Fairview Park Drive, Suite 200
        Falls Church, VA  22042-0683
        Facsimile:

        *With a copy to:*
        Swidler Berlin LLP
        3000 K Street, NW
        Suite 300
        Washington, DC 20007
        Attn:  Roger Frankel
        Facsimile: (202) 424-7643


2.      **Combustion Engineering, Inc.**
        c/o CVCSC
        175 Capital Boulevard
        Rocky Hill, CT 06067
        Attention: John Hughes
        Facsimile: (860) 529-5386

        *With a copy to*:
        Kirkpatrick & Lockhart LLP
        599 Lexington Avenue
        New York, NY 10022-6028
        Attn:   Jeffrey Rich
        Facsimile: (212) 536-3901


3.      **The Official Committee of Unsecured Creditors of Combustion Engineering, Inc.**

        *c/o:*  Caplin & Drysdale, Chartered
        399 Park Avenue, 36th Fl.
        New York, NY 10022
        Attn: Elihu Inselbuch
        Facsimile: (212) 644-6755

        *c/o:*  Frank/Gecker LLP
        325 N. LaSalle Street, Suite 625
        Chicago, IL  60610
        Attn:  Joseph D. Frank
        Facsimile:  (312) 276-0035


4.      **Filed with the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Case.**

**EXHIBIT A**
**LAW FIRM CLIENTS**

# EXHIBIT C

**STATEMENT OF FINANCIAL AFFAIRS ATTACHMENT FOR # 3a
PAYMENTS TO CREDITORS**

| CREDITORS | AMOUNT PAID | AMOUNT STILL OWED |
|---|---|---|
| CE SETTLEMENT TRUST | 106,171,354 | |
| DEFENSE ATTORNEYS | | 1,391,278 |
| TRUMBULL SERVICES COMPANY<br>PO BOX 31900<br>HARTFORD, CT | | 500,000 |
| PLAINTIFF & DEFENSE ATTORNEYS | 27,825,043 | |
| WINDSOR SITE EXPENSES | 1,784,460 | |
| TOTAL | 135,780,857 | 1,891,278 |

## CERTIFICATE OF SERVICE

I, CELESTE A. HARTMAN, Senior Paralegal, hereby certify that I am over the age of 18 and that on February 8, 2005, I caused the *Report to the Court by David T. Austern, as Representative of the Bankruptcy Estate, with Respect to Certain Avoidance Actions* to be served via Facsimile on the persons appearing on the attached List.

Under penalty of perjury, I certify the foregoing to be true and correct.

_____

CELESTE A. HARTMAN

Combustion Engineering Agenda Notice
Service List for 2/10/05 Hearing
Case No. 03-10495 (JKF)
 Document # 105432
**25 – Facsimile**

*Facsimile 302-302-573-6497*
Richard Schepacarter, Esquire
(Office of the U.S. Trustee)
(Special Request)

*Facsimile 212-536-3901*
Jeffrey N. Rich, Esquire
(Co-Counsel to Debtor)
(Special Request)

*Facsimile 202-778-9100*
Judith S. Karp, Esquire
(Co-Counsel to Debtor)
(Special Request)

*Facsimile 412-355-6501*
Neal R. Brendel, Esquire
(Co-Counsel to Debtor)
(Special Request)

*Facsimile 312-861-2200*
Marilyn Palm Esquire
)
(Special Request)

*Facsimile 212-446-4900*
Theodore Freedman, Esquire
)
(Special Request)

*Facsimile 302-657-4901*
Michael Lastowski, Esquire
(Co-Counsel to Official Committee of
Unsecured Creditors)
(Special Request)

*Facsimile 302-658-3989*
Dereck C. Abbott, Esquire
Daniel B. Butz, Esquire
(Counsel for Wilmington Trust Company)
(Special Request)

*Facsimile 302-654-2067*
William P. Bowden, Esquire
Ricardo Palacio, Esquire
(Counsel for AIG Member Companies)
(Special Request)

*Facsimile 214-520-1181*
Elihu Inselbuch, Esquire
(Counsel for Certain Asbestos Claimants)
(Special Request)

*Facsimile 302-504-7820*
Noel C. Burnham, Esquire
Natalie D. Ramsey, Esquire
(Counsel for Francesca Trinchese,
successor-in-interest to Victor Trinchese,
deceased party)
(Special Request)

*Facsimile 302-658-6537*
Brian L. Kasprzak, Esquire
(Counsel for Stonewall Ins. Co. Century
Indemnity Co.)
(Special Request)

*Facsimile 302-571-1750*
Brett D. Fallon, Esquire
(Counsel for Hasbrouck Haynes, Jr. Trustee
of the CE Settlement Trust)
(Special Request)

*Facsimile 302-504-7820*
Richard G. Placey, Esquire
(Counsel for Certain Claimants)
(Special Request)

*Facsimile 302-658-7567*
Kevin Gross, Esquire
(Counsel for CAN Insurance Companies)
(Special Request)

15252-001\DOCS_DE:105432 1

*Facsimile 302-651-7701*
Mark D. Collins, Esquire
(Counsel for Andritz (USA), Inc.)
(Special Request)

*Facsimile 302-351-8010*
Sasha L. Azar, Esquire
(Counsel for Ball Park Food Corp.)
(Special Request)

*Facsimile 302-777-1705*
R. Stokes Nolte, Esquire
(Counsel for Asbestos Personal Injury
Claimants)
(Special Request)

*Facsimile 302-655-4210*
Karen C. Bifferato, Esquire
Michelle McMahon, Esquire
(Counsel for First State Insurance Co.)

Facsimile: 302-652-4400
Curtis A. Hehn, Esquire
Pachulski Stang
(Counsel to Debtors)

*Facsimile 302-658-9836*
James S. Yoder, Esquire
)
(Special Request)

*Facsimile 504-599-8660*
Elizabeth Wall Magner, Esquire
(Counsel for Francesca Trinchese,
successor-in-interest to Victor Trinchese,
deceased party)

*Facsimile 312-269-1747*
Frances Gecker, Esquire
(Co-Counsel to Official Committee of
Unsecured Creditors)
(Special Request)

*Facsimile 215-575-7200*
Peter C. Hughes, Esquire
(Counsel for Westport Insurance Company)
(Special Request)

*Facsimile 510-559-9970*
Dean A. Hanley, Esquire
(Counsel for Francesca Trinchese,
successor-in-interest to Victor Trinchese,
deceased party)