**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **COMBUSTION ENGINEERING, INC,** ) | |
| ) | **Case No. 03-10495 (JKF)** |
| Debtor. ) | |
| ) | |

| | |
|---|---|
| ) | |
| **PRE-PETITION COMMITTEE OF SELECT** ) | |
| **ASBESTOS CLAIMANTS and VICTOR** ) | |
| **TRINCHESE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Adversary No. _____** |
| ) | |
| **COMBUSTION ENGINEERING, INC.,** ) | |
| **HASBROUCK HAYNES, JR., CPA as Regular** ) | |
| **Trustee of the CE Settlement Trust dated November** ) | |
| **22, 2002,WILMINGTON TRUST COMPANY, a** ) | |
| **Delaware Banking Corporation, as the Delaware** ) | |
| **Trustee of the CE Settlement Trust dated November** ) | |
| **22, 2002, JOSEPH F. RICE, Claimant** ) | |
| **Representative, THE CE SETTLEMENT TRUST** ) | |
| **dated November 22, 2002, and JOHN AND JANE** ) | |
| **DOES Nos. 1-75,000 (being unknown persons** ) | |
| **and/or entities to whom payment was made from** ) | |
| **the Trust and those unknown persons and entities** ) | |
| **for whose benefit such payments were made within** ) | |
| **ninety (90) days prior to Debtor's bankruptcy** ) | |
| **petition),** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**SUMMONS AND NOTICE OF PRETRIAL CONFERENCE**
**IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk:
824 Market Street, 5th Floor
Wilmington, DE 19801

At the same time, you must also serve a copy of the motion or answer upon the plaintiffs' attorney.

Name and Address of Plaintiffs' Attorney :

Noel C. Burnham, Esquire
Montgomery, McCracken, Walker
& Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801

Natalie D. Ramsey, Esquire
Montgomery, McCracken, Walker
& Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Dean A. Hanley
Paul, Hanley & Harley, LLP
1608 Fourth Street, Suite 300
Berkeley, California 94710

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

Address :                                          Room: TBD
United States Bankruptcy Court
824 market Street Mall                             Date and Time:
Wilmington, DE 19801                               April 28, 2003 @ 1:30 p.m.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**United States Bankruptcy
Court for the District
of Delaware**

                                    /s/ David D. Bird
                                    *Clerk of the Bankruptcy Court*

Date: February 27, 2003

**CERTIFICATE OF SERVICE**

I, _____, certify that I am, and at all times during the service of process was,
              (name)
not less than 18 years of age and not a party to the matter concerning which service of process was made. I further
certify that the service of this summons and a copy of the complaint was made _____by:
                                              (date)

Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

Under penalty of perjury, I declare that the foregoing is true and correct.

_____
Date

_____
Signature

Print Name:

Business Address:

City:                        State:          Zip:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| COMBUSTION ENGINEERING, INC., | ) |
| | ) Case No. 03-10495 (JKF) |
| Debtor. | ) |
| | ) |
| PRE-PETITION COMMITTEE OF | ) |
| SELECT ASBESTOS CLAIMANTS and | ) |
| VICTOR TRINCHESE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary No. _____ |
| | ) |
| COMBUSTION ENGINEERING, INC., | ) |
| HASBROUCK HAYNES, JR., CPA as | ) |
| Regular Trustee of the CE Settlement | ) |
| Trust dated November 22, 2002, | ) |
| WILMINGTON TRUST COMPANY, a | ) |
| Delaware Banking Corporation, as the | ) |
| Delaware Trustee of the CE Settlement | ) |
| Trust dated November 22, 2002, JOSEPH | ) Hearing Date: |
| F. RICE, Claimant Representative, THE | ) |
| CE SETTLEMENT TRUST dated | ) |
| November 22, 2002, and JOHN AND JANE | ) Objection Deadline: |
| DOES Nos. 1-75,000 (being unknown | ) |
| persons and/or entities to whom payment | ) |
| was made from the Trust and those | ) |
| unknown persons and entities for whose | ) |
| benefit such payments were made within | ) |
| ninety (90) days prior to Debtor's | ) |
| bankruptcy petition), | ) |
| | ) |
| Defendants. | ) |

---

NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As a party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. The purpose of this Notice is to furnish general information about ADR.

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an important third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in that event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests de novo review of an arbitration award, the judge will rehear the case.

Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.

Dated   February 27, 2003

                                    /s/ David D. Bird
                                    Clerk of Court

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **COMBUSTION ENGINEERING, INC,** ) | |
| ) | **Case No. 03-10495 (JKF)** |
| Debtor. ) | |
| ) | |

| | |
|---|---|
| ) | |
| **PRE-PETITION COMMITTEE OF** ) | |
| **SELECT ASBESTOS CLAIMANTS and** ) | |
| **VICTOR TRINCHESE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Adversary No. _____** |
| ) | |
| **COMBUSTION ENGINEERING, INC.,** ) | |
| **HASBROUCK HAYNES, JR., CPA as** ) | |
| **Regular Trustee of the CE Settlement** ) | |
| **Trust dated November 22, 2002,** ) | |
| **WILMINGTON TRUST COMPANY, a** ) | |
| **Delaware Banking Corporation, as the** ) | |
| **Delaware Trustee of the CE Settlement** ) | |
| **Trust dated November 22, 2002, JOSEPH** ) | |
| **F. RICE, Claimant Representative, THE** ) | |
| **CE SETTLEMENT TRUST dated** ) | |
| **November 22, 2002, and JOHN AND JANE** ) | |
| **DOES Nos. 1-75,000 (being unknown** ) | |
| **persons and/or entities to whom payment** ) | |
| **was made from the Trust and those** ) | |
| **unknown persons and entities for whose** ) | |
| **benefit such payments were made within** ) | |
| **ninety (90) days prior to Debtor's** ) | |
| **bankruptcy petition),** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF TO PREVENT DISBURSEMENTS FROM THE CE SETTLEMENT TRUST

Plaintiffs, the Pre-Petition Committee Of Select Asbestos Claimants (the "SAC") and

Victor Trinchese ("Trinchese"), an individual suffering from mesothelioma caused by exposure

to asbestos, bring this adversary action for an order: (1) enjoining Defendants from making any further distributions from the CE Settlement Trust (the "Trust"); (2) for an accounting of all transfers to and payments from the Trust; (3) authorizing Plaintiffs to bring actions for avoidance of the transfers to and by the Trust pursuant to § 547, § 548, § 549 and § 550 of the Bankruptcy Code or, in the alternative, appointing a trustee to pursue such actions on behalf of the Debtor's estate; and (4) enjoining CE from making any further or additional transfers to the CE Settlement Trust. As set forth below, there is a serious risk of immediate and irreparable injury to the creditors of CE because during the ninety days preceding the filing of the petition, CE transferred approximately $400 million in assets to a pre-petition trust that has been paying, and continues to pay, pre-petition asbestos-related injury claims allegedly filed against the Debtor. Said claims are being paid in profession and priority to both existing claims and future demands. Accordingly, Plaintiffs are also seeking a temporary restraining order and preliminary injunction concurrently with the filing of this complaint. In support of this complaint, Plaintiffs submit the Declarations of Elizabeth Magner, Esquire and Victor Trinchese and allege as follows:

## The Parties

1. The SAC is a group of law firms specializing in the representation of individuals suffering with cancers (mesothelioma, lung and others) caused by exposure to asbestos products. (Declaration of Elizabeth Magner, Esquire ("Magner Decl." ¶ 2.)) The SAC and its members actively participate in the bankruptcy cases of numerous asbestos companies including the following: *Owens Corning*, Case No. 00-03837 (D. Del.); *Pittsburgh Corning Corporation*, Case No. 00-22876 (W.D. Pa.); *GAF Corporation* (G-I Holdings, Inc., and related filings), Case No. 01-30135 (D. N.J.); *U.S. Gypsum*, Case No. 01-02094 (D. Del.); *Federal-Mogul Global Inc*. (and related filings), Case No. 01-10578 (D. Del.); *WR Grace & Co.*, Case No. 01-01139 (D. Del.);

Babcock & Wilcox Co., Case No. 00-0558 (D. La.); *United States Mineral Products Company*, Case No. 01-02471 (D. Del.); *Harbison Walker Refractories, Co*., Case No. 02-21627 (W.D. Pa.); In re A.P. Green, Case No. 02-21639 (W.D. Pa.); *North American Refractories Co*., Case No. 02-21639 (W.D. Pa.); *ACand S, Inc*., Case No. 02-12687, (D. Del.); *Kaiser Aluminum Corporation*, Case No. 02-10429 (D. Del.).

2.    The members of the SAC represent numerous persons with claims for asbestos-related injury against Combustion Engineering, Inc. ("CE" or "Debtor").  Magner Decl. ¶ 2.

3.    Victor Trinchese is a citizen of California.  On October 8, 2002, Trinchese entered into a settlement agreement with CE in connection with his claims for personal injury arising from exposure to asbestos and/or asbestos-containing products.[1]  *See* Declaration of Dean Hanley on behalf of Victor Trinchese, ¶ 4.

4.    CE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Connecticut.

5.    Defendant The CE Settlement Trust is a trust organized and existing under the laws of the State of Delaware.

6.    Defendant Hasbrouck Haynes, CPA ("Haynes"), is a citizen of the State of Alabama and is identified as the "Regular Trustee" of The CE Settlement Trust in the agreement establishing that trust.

7.    Defendant Wilmington Trust Company ("Wilmington Trust") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware.

---

[1]    Mr. Trinchese is seriously ill with mesothelioma, a cancer caused by exposure to asbestos.  Mr. Trinchese has executed a power of attorney to his counsel, Paul, Hanley & Harley, LLP, which has signed his Declaration on his behalf.

8.     Defendant Joseph F. Rice ("Rice") is a citizen of the State of South Carolina and is identified as the "Claimants' Representative" of Defendant The CE Settlement Trust in the agreement establishing that trust.

9.     Defendants, John Doe and Jane Doe 1-75,000, are unknown persons and/or entities that are the mediate/intermediate transferees of payments made by the Trust for beneficiaries and the beneficiaries and ultimate recipients of various payments the Trust made within ninety (90) days prior to CE's bankruptcy filing.

## Jurisdiction

10.     This is an adversary proceeding brought pursuant to Bankruptcy Rule 7001(1) relating to recovery of property belonging to the above entitled estate, of which this Court has jurisdiction under the provisions of title 28 U.S.C. § 157(b).

11.     Pursuant to Bankruptcy Rule 7008 plaintiff states that this proceeding is core.

## Background Facts

12.     During a period beginning more than 3 weeks prior to CE's filing of a voluntary Chapter 11 petition in this case, the SAC had numerous communications with representatives of and counsel for ABB, Ltd., a Swiss corporation that is the shareholder of ABB, Inc. a/k/a Asea Brown Boveri, Inc., a Delaware corporation that, in turn, is the sole shareholder of CE, with the CE Settlement Trust, through counsel for Hasbrouck Haynes, Jr., C.P.A., with counsel for the future claimants representative and with the defendant Joseph F. Rice, Esq., during which communications the SAC advised such representatives and counsel that the SAC considered the establishment and funding of the CE Settlement Trust to constitute an avoidable preference or preferences under the Bankruptcy Code (as well as otherwise being inequitable and inappropriately structured), and, further, that the SAC intended to file an involuntary bankruptcy

-4-

petition against CE in a time frame so as to seek avoidance of such funding under Section 547 and other appropriate provisions of the Bankruptcy Code.  Magner Decl. ¶ 16.

13.     In addition to other communications, on February 4, 2002, members of and counsel for the SAC met with David Bernick, Esquire ("Mr. Bernick"), counsel for ABB, Ltd. and various officers and other representatives of ABB, Ltd. in Washington, D.C. to discuss concerns of the SAC with the CE proposed pre-packed plan and transaction.

14.     On February 7, 2003, Montgomery, McCracken, Walker & Rhoads, LLP ("Montgomery, McCracken") authored a letter to the CE Settlement Trust, sent by facsimile and Federal Express, to the plaintiff, Hasbrouck Haynes, Jr. C.P.A., the so-called Regular Trustee, his counsel Burr & Forman, LLP, to Wilmington Trust Company, the so-called Delaware Trustee of the CE Settlement Trust, and its counsel, Morris, Nichols, Arsht & Tunnell.  (Exhibit 1).

15.     An involuntary petition against CE under Chapter 7 of the Bankruptcy Code was prepared and certain creditors holding asbestos-related personal injury claims against CE and the SAC intended to file an involuntary cases against CE by midnight on February 12, 2002, in order, out of an abundance of caution, to preserve the opportunity to challenge as preferential transfers certain transfers alleged to have been made by CE as early as November 14, 2002. Magner Decl. ¶ 17.

16.     On February 14, 2003, Elizabeth Magner, Esquire had multiple conversations with David Bernick, Esquire, counsel for ABB, Ltd. at a meeting in Houston, Texas between various proponents of the CE Plan and approximately 100 members of the asbestos plaintiffs bar, in which Mr. Bernick stated that ABB, Ltd., CE and their respective counsel would deliver a letter confirming that the preference period with respect to the CE Settlement Trust would not

expire earlier than February 19, 2003, in exchange for an agreement by the SAC and others not to file an involuntary petition against CE on February 14, 2003. Magner Decl. ¶ 18.

17.    Mr. Bernick also advised Ms. Magner that during the additional time between February 12, 2003 and February 19, 2003, the plan proponents would engage in discussions with the SAC to consider and attempt to address its concerns with the Plan, the CE Settlement Trust, the trust to be funded for payment of future claims, and the trust procedures with respect to both trusts.

18.    On February 12, 2003, in connection with the agreement reached between Mr. Bernick and Ms. Magner, Theodore S. Freedman, Esq. of Kirkland & Ellis LLP , counsel for ABB, Ltd., executed a representation styled Stipulation, in his capacity as counsel to ABB, Ltd. in connection with the creation of the CE Settlement Trust and the contemporaneous Master Settlement Agreement, confirming that the 90 day preference period under Section 547 of the Bankruptcy Code with respect to the creation and funding of such trusts would not expire before February 17, 2003 and, further, acknowledging that certain creditors of CE, on whose behalf the named defendant Elizabeth Wall Magner, Esq. and Montgomery, McCracken were acting to facilitate the filing of such an involuntary petition, were relying on such confirmation in forbearing from taking such action on that date. (Exhibit 2).

19.    On February 14, 2003, Ms. Magner, Esq., in telephone conversations with Mr. Bernick, was orally assured that, to accommodate the concerns of the SAC and others, a voluntary petition in bankruptcy would be filed by CE at or before 3:00 p.m. E.S.T. on Monday, February 18, 2003 and, further, that good faith negotiations would take place concerning amendments to the trust for the benefit of asbestos claimants to be provided for in CE's proposed Chapter 11 plan. Magner Decl. ¶ 19.

20.     The clear purpose and import of Mr. Freedman's February 12, 2003 written stipulation and Mr. Bernick's February 14, 2003 telephone conversations with Ms. Magner was that the timing of CE's voluntary Chapter 11 filing would permit timely avoidance actions to be filed challenging the funding of the CE Settlement Trust as preferential, and that the structural challenges identified by the SAC (and others) to the proposed trust for asbestos claimants contained in the prepetition plan would be addressed by amended plan provisions.

21.     On February 17, 2003, at approximately 7:52 a.m., CE filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code.

22.     The Chapter 11 plan filed and proposed by CE is the same plan (a) for which it had solicited prepetition acceptances, (b) which the SAC had verbally challenged as inequitable to the clients of the SAC lawyers and otherwise inappropriate, and (c) which CE had assured Ms. Magner would be negotiated in good faith to address the concerns and challenges raised by the SAC.  Magner Decl.¶ 20.

23.     By this Complaint, Plaintiffs, *inter alia*, seek to enjoin distributions from the CE Settlement Trust and for an accounting of all transfers to and from the Trust pursuant to § 543 of the Bankruptcy Code, to enjoin distributions from the CE Settlement Trust pursuant to § 105 to preserve and protect pending investigation and pursuit of avoidance actions under §§ 547, 548, 549 and 550 of the Bankruptcy Code.

24.     By subsequent and separate filings, the SAC and its lawyers, on behalf of certain of their clients who are creditors of CE, will challenge, *inter alia*, (a) the process and (b) the inappropriateness of the prepetition negotiations that gave rise to the CE Settlement Trust, (c) the terms of the CE Settlement Trust, (d) the CE disclosure statement and plan for which CE and the defendant, Joseph F. Rice, Esq., solicited prepetition acceptances, (e) Mr. Rice's role in the

process, (f) the terms of Mr. Rice's $20,000,000 compensation for the solicitation of prepetition

acceptances, and (g) the provisions of CE's Chapter 11 plan as filed.

## The CE Settlement Trust And Related Documents

25.    The Defendants established and funded the CE Settlement Trust on or about

November 22, 2002.  Copies of the CE Settlement Trust Agreement and exhibits 1-11 thereto are

attached hereto as Exhibit 3.

26.    Pursuant to a Master Settlement Agreement dated November 22, 2002 (the

"MSA"), the CE Settlement Trust was authorized to pay claims (hereinafter, "Actions") against

Debtor for asbestos-related injury if asserted against Debtor by suit or demand on or before

November 14, 2002.  A copy of the MSA is attached hereto as Exhibit 4.

27.    Under the MSA, Actions are, subject to additional conditions in the MSA, divided

into three categories to be satisfied as follows:

      a.    Payment Category 1: Actions that were fully settled as of November 14, 2002 and to which payment was past due on that date, or that were covered by a specified pre-existing settlement agreement.  Claims in Payment Category 1 are to be paid at a rate of 95% of the liquidated amount, in two installments.

      b.    Payment Category 2: Actions submitted to CE on or before November 14, 2002 that met all conditions and requirements for establishing a binding settlement under CE's historical settlement practices but which were not fully settled as of that date. Claims in Payment Category 2 are to be paid at a rate of 85% of the settlement amount, in two installments.

      c.    Payment Category 3: Other Actions filed or received by CE on or before November 14, 2002, but which are not in Payment Categories 1 or 2.  Claims in Payment Category 3 are to be paid in two installments, the first to be 37.5% of the settlement amount, and the second to be an amount up to 37.5% of the claimant's pro rata share of the remaining balance of the CE Settlement Trust's assets after payment of the claims in Payment Categories 1 and 2.

*See* MSA at Articles IV and V (Exhibit 4).

28.    Pursuant to Article 2.1 of the MSA, the CE Settlement Trust was to be formed and funded contemporaneously with execution of the MSA.  Pursuant to Article 2.4 of the CE Settlement Trust, on November 22, 2002 or as soon as practicable thereafter, CE was to execute and deliver all of its rights, title and interest in the CE Settlement Trust assets.

29.    Within the ninety days preceding the filing of CE's voluntary petition on February 17, 2003, Debtor made at least two transfers to the CE Settlement Trust.  One of these transfers was in the amount of $100,607,740.17, by issuance of a promissory note guaranteed by Debtor's parent, Asea Brown Boveri, Inc.  The SAC alleges, on information and belief, that CE has satisfied this note.  The other transfer was the assignment of a note payable to Debtor by Asea Brown Boveri, Inc. in the amount of $402 million.  According to the solicitation materials accompanying CE's solicitation under its pre-packaged plan, that note was payable on demand but with an outside due date of May 12, 2010 and a balance payable of $300,000,000.  Debtor's indirect parent, Asea Brown Boveri Ltd., a Swiss corporation, guaranteed both Debtor's performance under the promissory note and Asea Brown Boveri, Inc.'s performance under the assigned loan agreement.  *See* Disclosure Statement of Combustion Engineering, Inc. dated January 19, 2003 ("Disclosure Statement") at 22 & Exhibit A thereto at 6, copies of which are attached hereto as Exhibit 5.

### Pre-petition Negotiations

30.    On or about October 21, 2002, Debtor selected Joseph F. Rice ("Rice") as the negotiating agent for all existing personal injury claimants.  Rice's appointment by Debtor was neither disclosed to known claimants nor was their consent obtained.

31.    The MSA was negotiated by, among others, Debtor and Rice.  Disclosure Statement at 2, 20-21.

-9-

32.     Upon information and belief, after the terms of the MSA were substantially agreed upon, CE and Asea Brown Boveri Ltd. began disclosing the terms of the MSA to limited and select law firms.  This allowed a few firms to assert claims against Debtor, on behalf of their clients, on or before the cutoff date of November 14, 2002 to the detriment of all other present and future personal injury claimants.  These firms submitted for payment approximately 32,000 claims shortly before Debtor's cutoff date of November 14, 2002.  Magner Decl. ¶ 8.

33.     The SAC is confident that discovery, which it will seek to take on an expedited basis, will show that the claims filed by the select firms would not have been asserted in the absence of the impending conclusion of the MSA, and were commenced for the express purpose of taking advantage of the improper preferential funding of the CE Settlement Trust that Defendants Rice, CE, and the other persons and entities negotiating the pre-packaged plan arranged.  Magner Decl. ¶ 22.

34.     Historically, upon information and belief, Debtor was the subject of an average of approximately 30,000 claims for asbestos-related claims per year.  (Magner Decl. ¶ 11).  The Disclosure Statement reflects that during 2001, Debtor was the subject of approximately 55,000 claims for asbestos-related claims per year which then escalated to approximately 79,000 in 2002.  *See* Disclosure Statement at 14 a copy of which is attached hereto as Exhibit 6.

35.     Under the MSA, the qualification of claims for payment is to be made by a Claims Reviewer who is selected by Debtor and Rice.  *See* MSA at 3 (Exhibit 4).

36.     In reality, Debtor and its related companies have little if any economic incentive to scrutinize the qualification of asbestos-related claims under the MSA, because the ultimate cost of settlement is to be capped initially by their contributions to the CE Settlement Trust and later by the funding of the Asbestos PI Trust and the section 524(g) channeling injunction.

-10-

37.     In fact, the CE Settlement Trust and Asbestos PI Trust have very different Trust Distribution Procedures, whose operation, irrespective of the underfunding of the Asbestos PI Trust, will inevitably lead to inequitable treatment.  The Trust Distribution Procedures for the Asbestos PI Trust place strict monetary limits on the amounts payable for specific conditions, whereas those for the CE Settlement Trust are based on application of a percentage to amounts received through litigation or CE's historical settlement practices.  In addition, claimants requesting payment from the Asbestos PI Trust will also have to meet strict medical exposure product identification criteria.  The SAC avers, on information and belief, that claimants to the CE Settlement Trust will not be required to submit identical criteria but instead, a much lower threshold of proof.  *See* Trust Distribution Procedures, §§ 5.2, 5.7(a)(1)(c), MSA; *compare* Disclosure Statement Exhibit B (Plan of Reorganization) Exhibit G thereto at 13-19, copies of which are attached hereto as Exhibit 7, *with* MSA at 11-13 (Exhibit 4).  The lack of uniform standards opens the door to a wide range of variation in the preferentially-treated claimants paid by the CE Settlement Trust, potentially further impairing those whose claims would be settled by the Asbestos PI Trust.

38.     Upon information and belief, the approximately 32,000 claims described in paragraph 32 above were not subjected to any meaningful review before being qualified for payment under the MSA.  Magner Decl. ¶ 14.

39.     Debtor's failure to ensure meaningful review of claims submitted to the CE Settlement Trust is further manifested in paragraph 4.3(a) of the MSA, under which it agreed that "any Asbestos Claim that was submitted on or before February 1, 2003, and that has not been accepted or rejected on or before February 18, 2003, *shall be deemed accepted as of February 18, 2003*."  *See* MSA at 10 (Exhibit 4) (emphasis added).

-11-

40.    In addition, Debtor faces a strong disincentive to scrutinize claims filed by Rice and the other attorneys coordinating their activities with him, because Rice was leading, and in fact did lead, the process of soliciting votes of creditors in favor of confirmation of the proposed pre-packaged plan.  *See* November 27, 2002 Memorandum of Joseph F. Rice to his clients, located at the Internet Web site of Ness Motley, P.A., http://www.nessmotley.com/practiceareas/bankruptcy/combustion/ceclientltr.pdf (last visited Feb. 21, 2003), a copy of which is attached hereto as Exhibit 8.

### Money Is Daily Disappearing From This Estate

41.    Upon information and belief, distributions of settlement funds under the MSA began as early as November 2002 and have exceeded $45 million to date.  Magner Decl. ¶ 21.

42.    Under the proposed "pre-packaged" plan of reorganization filed by Debtor on February 17, 2003, a second trust, known as the "Asbestos PI Trust," will be established if the proposed plan is confirmed.  *See* Disclosure Statement at 49, a copy of which is attached hereto as Exhibit 9.

43.    If the pre-packaged plan is confirmed and the section 524(g) channeling injunction entered, the Asbestos PI Trust will be the sole source of funds for the settlement of claims against Debtor for asbestos-related injury existing at the time of the establishment of the Asbestos PI Trust or arising any time thereafter.  *See* Exhibit 9.

44.    According to the Disclosure Statement, the Asbestos PI Trust is to be funded by contributions from Debtor, Asea Brown Boveri Ltd., and Asea Brown Boveri, Inc.  *See* Disclosure Statement at 50-51, copies of which are attached hereto as Exhibit 10.

45.    The key contributions to the Asbestos PI Trust will be in the form of:  (1) 30,298,913 shares of stock in Asea Brown Boveri Ltd., worth approximately about $78 million at

the current stock price; (2) a non-interest-bearing note in the amount of $250 million payable to the Asbestos PI Trust over three (3) years, beginning in 2004; (3) an assignment of insurance in the amount of $94,500,000 payable over nine (9) years without interest; and (4) contingent on Asea Brown Boveri's financial performance, a potential additional contribution of $100 million payable in 2006-2008. *See* Disclosure Statement at 50 & Exhibit B thereto (Plan of Reorganization) at Exhibit B (Insurance Assignment Agreement), attached hereto as Exhibit 11. The other contributions are not expected to cause a material difference in the funding of the Asbestos PI Trust. Thus, at current stock valuations and assuming adequate future financial performance, the contribution to the Asbestos PI Trust will be about $522 million, before any reduction to present value. However, as CE admits in its Informational Statement, ABB is in dire financial condition, with a severe cash crisis throughout 2002, its bonds downgraded to a "junk" rating by Standard & Poors, and its stock price at $2.28 per share, down from its high of $33.20 per share three years ago. *See* Informational Statement at 7-10. Furthermore, the insurance coverage anticipated for the Asbestos PI Trust is uncertain due to disputed claims and the financial instability of the carriers themselves. See Informational Statement at 4 ("While CE has $198 million face amount of excess insurance, certain carriers dispute coverage, and insurer insolvencies may impact recovery."). Additionally, said coverage is not protected by a stay in these proceedings and is therefore subject to dissipation by present claimants in a race to the courthouse.

46.    The preferential settlement payments from the CE Settlement Trust have caused, and if continued will cause, claimants to be paid by the Asbestos PI Trust to be treated inequitably.

47.    Based on historical experience in other asbestos-related bankruptcies, the *present value* of future demands can typically be expected to be *four to twelve times* the number of pre-petition claims.  (Magner Decl. ¶ 13.)  Stephen J. Carroll, Deborah R. Hensler, Allan F. Abrahamse, Jennifer Gros, Michelle J. White, J. Scott Ashwood, *Asbestos Litigation Costs and Compensation:  An Interim Report* (RAND Inst., 2002).

48.    Indeed, the Trust Distribution Procedures for the Asbestos PI Trust admit that "there is inherent uncertainty regarding CE's total asbestos liabilities, as well as the total assets available to pay such claims.  Consequently, there is inherent uncertainty regarding the amounts that holders of Allowed CE Asbestos Trust Claims will receive."  *See* Disclosure Statement Exhibit B (Plan of Reorganization) Exhibit G thereto at 8, a copy of which is attached hereto as Exhibit 12.

49.    The inherent uncertainty in estimating future liability for asbestos-related claims is well-known.  For example, in *In re Babcock & Wilcox Co.*, 274 B.R. 230 (Bankr. E.D. La. 2002), the Bankruptcy Court for the Eastern District of Louisiana considered the testimony of several experts whose estimates of the future liability ranged from $2 billion to $12 billion.  *Id.* at 24-48.  The Court also considered expert testimony that B & W could expect to receive between 652,000-1.14 million future demands.  Like CE, Babcock & Wilcox was a designer, manufacturer and installer of industrial boilers whose claims history should mirror that of CE.  Of course, without full discovery into CE's asbestos-related claims history, its existing and future demands cannot be determined.  Nevertheless, there can there be no confidence that the funding proposed for the Asbestos PI Trust will result in equitable treatment of future claimants thereunder.  What can be assumed is that the funding levels in the Asbestos PI Trust are wholly inadequate.

-14-

50.    In this case, it can be reasonably expected that claims will be submitted to the Asbestos PI Trust for as long as twenty years.  Independent studies have indicated that as many as 600,000 claims have been filed based on asbestos injury but that less than half of the claimants have come forwards.  (Magner Decl. ¶ 12.)  *See* Stephen J. Carroll, Deborah R. Hensler, Allan F. Abrahamse, Jennifer Gros, Michelle J. White, J. Scott Ashwood, *Asbestos Litigation Costs and Compensation:  An Interim Report* (RAND Inst., 2002).

51.    As noted in paragraph 29 above, the preferential transfers to the CE Settlement Trust amounted to about $402 million.  In light of the fact that (1) existing claims excluded from participation in the CE Settlement Trust, (2) the unpaid portion of claims accepted by the CE Settlement Trust, and (3) future demands will all find their way to the Asbestos PI Trust, it is a virtual certainty that the Asbestos PI Trust will be required to pay many times the claims being satisfied by the CE Settlement Trust.

52.    Accepting for the sake of argument that the 100,000 or so claims received by the CE Settlement Trust to date are valid and properly brought only underscores the SAC's concern.  Only these claimants will enjoy distributions of 95% to 75% on their claims.  This select subset of personal injury claimants will garner over 50% of Debtor's pre-petition net worth.

53.    As to the excluded claims and future demands, they are relegated to share in a fund composed principally of stock and notes in a financially troubled affiliate, disputed insurance claims and cash payable on liquidated policies over an extended period.

54.    Further, as set forth in CE's Disclosure Statement, if the plan as proposed is not confirmed, even those assets will evaporate.  Thus the only true assets of Debtor available to pay claims is the cash held by the CE Settlement Trust and being disbursed preferentially to select pre-petition personal injury claimants.

55.    The funding proposed for the Asbestos PI Trust would severely underfund the settlement of CE's asbestos-related liabilities and place claimants from the Asbestos PI Trust at grave risk of inequitable treatment.

56.    Upon information and belief, Rice began soliciting votes for confirmation of the proposed plan before a representative to protect the interests of future claimants of the Asbestos PI Trust had even been selected.  (Magner Decl. ¶ 9.)

57.    If Debtor's representation to the Court is correct that this is a pre-packaged plan that anticipates payment of 100% of the asbestos personal injury claims and that confirmation will proceed in swift order, Debtor will not be prejudiced by a temporary halt during a "limited" period of administration.  Conversely, if Debtor is incorrect, and distributions continue from the CE Settlement Trust, the later retrieval of such distributions will prove extremely costly if not impossible as they are disbursed to 100,000 claimants or more.

58.    Defendant Regular Trustee Hasbrouck Haynes, Jr., CPA's Complaint commencing Adversary Proceeding No. 03-50947 ("Haynes' Complaint") admits that "Rice – without objection from Debtor – has instructed Trustee to continue making payments under the Trust Agreement."  Complaint at ¶ 16.

59.    Moreover, Haynes' Complaint admits that "The Trust is continuing to make disbursements pursuant to the Trust Documents . . . ."  Complaint at ¶ 17.

### Count I – The CE Settlement Trust Is Prohibited By CE's Bankruptcy Filing From Making Any Payment Or Other Disbursement (11 U.S.C. § 543(a))

60.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 59 inclusive, as if fully set forth herein.

61.    Section 543(a) of the Bankruptcy Code provides that "[a] custodian with knowledge of the commencement of a case under this title concerning the debtor may not make

any disbursement from, or take any action in the administration of, property of the debtor, . . . in the control of such custodian, except such action as is necessary to preserve such property."

62.    Defendants CE Settlement Trust, Wilmington Trust Company ("Wilmington Trust") and Haynes are custodians under § 543.

63.    Section 101(11)(C) broadly defines a custodian as a "trustee, receiver, or agent under applicable law, or under contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors."  Bankr. Code section 101(11)(C).  The legislative history indicates that Congress intended the term 'custodian' to encompass a variety of pre-petition agents who had taken charge of the debtor's assets.  *Cash Currency Exch. Inc. v. Shine*, 762 F.2d 542, 553 (7th Cir. 1985).  *See also In re Redman Oil Co*., 95 B.R. 516, 521 (Bankr. S.D. Ohio 1988) ("Section 101(11)(C) is sufficiently broad to include not merely pre-petition liquidators of a debtor's property, but also those entities who administer the assets of a debtor for the general protection of its creditors.").

64.    The Debtor has an interest cognizable under 11 U.S.C. § 541 in the property constituting the Trust Assets, both in the hands of the Trustees and in the hands of subsequent transferees of the Trust Assets, as follows:

(a)    Pursuant to the pour-over provisions of sections 8.1(c) and 8.2 of the Trust Agreement itself;

(b)    Pursuant to the pour-over provisions of section 7.2.9 of the Debtor's proposed and filed plan of reorganization;

(c)    Pursuant to the provisions of 11 U.S.C. § 541(a)(1) with respect to equitable interests;

(d)     Pursuant to the provisions of 11 U.S.C. § 541(a)(3) with respect to avoidance recoveries under 11 U.S.C. § 550;

(e)     Pursuant to the provisions of 11 U.S.C. § 541(a)(4) with respect to property ordered transferred to the Debtor under 11 U.S.C. § 551;

(f)     Pursuant to the provisions of 11 U.S.C. § 541(a)(7) with respect to any interests in property that the Debtor acquires post-petition; and/or

(g)     Pursuant to the provisions of 11 U.S.C. § 543 with respect to property in the possession of a custodian.

65.     The provisions of section 2.6 of the Trust Agreement, purporting to effect or declare the termination of all interest of the Debtor in the contributed Trust Assets are ineffective and unenforceable:

(a)     As being inconsistent with the pour-over provisions of sections 8.1(c) and 8.2 of the Trust Agreement itself;

(b)     As being inconsistent with the pour-over provisions of Section 7.2.9 of the Debtor's proposed and filed plan of reorganizations; and

(c)     As being in violation of the provisions of 11 U.S.C. § 541(c)(1)(B); such violation is not excepted from or excused by the provisions of 11 U.S.C. § 541(c)(2) because the conflicting provisions of sections 8.1(c) and 8.2 of the Trust Agreement render the provisions of section 2.6 of the Trust Agreement as, at best, ambiguous and unenforceable and, at worst, equitably void and unenforceable under applicable nonbankruptcy law.

66.     Assets of the estate are broadly defined by section 541(a) of the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the commencement of

the case." 11 U.S.C. § 541(a). *See Rosenberg v. Friedman (In re Carole's Foods, Inc.)*, 24 B.R. 213 (1st Cir. B.A.P. 1982) ("'Property of the debtor' in section 543(a) includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian.").

67.    Moreover, the assets transferred to the CE Settlement Trust by CE are avoidable as preferential transfers made within the 90 day period prior to the filing of CE's bankruptcy petition and/or as fraudulent conveyances transferred without sufficient consideration and/or with the actual intent to defraud creditors.

68.    On February 17, 2003, the date of the filing of the aforesaid petition herein, the Defendants had knowledge of the commencement of this case.

69.    Defendant Haynes has admitted that distributions continue to be made from the CE Settlement Trust despite the mandates of § 543(a). *See* Haynes Complaint at ¶¶ 16-17.

### Count II – The CE Settlement Trust Must Turn Over All CE Settlement Trust Assets to the Debtor (11 U.S.C. §§ 543(b), 542(a))

70.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 69 inclusive, as if fully set forth herein.

71.    Section 543(b)(1) provides that a custodian shall deliver to the Debtor any property of the debtor held by or transferred to such custodian that "is in such custodian's possession, custody, or control on the date that such custodian acquired knowledge of the commencement of the case."

72.    Defendants CE Settlement Trust, Haynes and Wilmington Trust are custodians in possession, custody, and/or control of "property of the debtor held by or transferred to" such Defendants by the Debtor.

-19-

73.    In the Haynes Complaint, Defendant Haynes contests that he is a custodian as defined in § 543. *See* Haynes Complaint, ¶ 16.

74.    Even if Defendants the CE Settlement Trust, Haynes and Wilmington Trust were not custodians under § 543 of the Bankruptcy Code, which they are, § 542(a) similarly provides for turnover of property of the estate by "an entity, other than a custodian, in possession, custody, or control, of property that the trustee may use . . . under section 363 . . . ."

75.    Defendants the CE Settlement Trust, Haynes and Wilmington Trust are entities in possession, custody and control of property that the Debtor could use (and proposes, in fact to use, under its Plan) under § 363 of the Bankruptcy Code.

76.    As of the date of the filing of CE's petition (the "Petition Date"), § 543(b)(1) required the Defendants to turn over the CE Settlement Trust assets to the Debtor. *Id.*

77.    Moreover, § 542(a) would require Defendants CE Settlement Trust, Haynes and Wilmington Trust to turnover the CE Settlement Trust property even if they were not custodians as defined in § 543 (which they are).

78.    Defendants the CE Settlement Trust, Haynes and Wilmington Trust have failed to turn over the CE Settlement Trust assets to the Debtor, and indeed have continued to make distributions from the CE Settlement Trust despite and irregardless of the intervening bankruptcy filing by CE.

<u>**Count III – Demand For An Accounting By**</u>
<u>**The CE Settlement Trust (11 U.S.C. § 543(b)(2))**</u>

79.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 78 inclusive, as if fully set forth herein.

80.    Section 543(b)(2) requires that a custodian "file an accounting of any property of the debtor . . . that, at any time, came into the possession, custody, or control of such custodian."

-20-

81.    Payments from the CE Settlement Trust are being made to or for the benefit of asbestos personal injury claimants with claims against CE.

82.    Upon information and belief, some or all of those payments are being made to law firms representing claimants, and may be more readily recoverable from the law firms that after disbursement to the ultimate claimants.

83.    The immediate filing of an accounting by Defendants the CE Settlement Trust, Haynes and Wilmington Trust is needed to enable the estate to maximize recovery of distributions that have been made to and from the Trust since its formation and funding.

### Count IV – The Transfers To And From The CE Settlement Trust Are Avoidable Preferences (11 U.S.C. § 547)

84.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 83 inclusive, as if fully set forth herein.

85.    On or within ninety (90) days (the "Preference Period") before the date of the filing of the Debtor's petition, the Debtor made certain transfers to the CE Settlement Trust.

86.    The transfers to the CE Settlement Trust were to or for the benefit of the Defendants and certain preferred creditors.  11 U.S.C. § 547(b)(1).

87.    The transfers to the CE Settlement Trust were made on account of a debt obligation for which the Debtor was legally bound to pay before the transfers were made. 11 U.S.C. § 547(b)(2).

88.    The transfers to the CE Settlement Trust were made while the Debtor was insolvent.  11 U.S.C. § 547(b)(3).

89.    As a result of the transfers, Defendants John Does and Jane Does 1-75,000 received more on account of their debts than they would have received if this case were a case

-21-

under Chapter 7 of the Bankruptcy Code, the transfers had not been made, and such Defendants received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

90.    The Debtor created and funded the CE Settlement Trust in anticipation of its bankruptcy filing, and even after being advised that transfers to the CE Settlement Trust would be challenged as avoidable preferential transfers.

91.    The Debtor can not be expected to pursue avoidance actions against the recipients of the Trust payments.

92.    No official committee of creditors has been formed in this case, and no other party has yet sought leave of court to pursue preference actions on behalf of the estate.

93.    Section 1104(a) provides that "[a]t any time after the commencement of a case but before confirmation of a plan, on request of a party in interest . . . and after notice and hearing, the court shall order the appointment of a trustee – (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . or (2) if such appointment is in the interest of creditors . . . and other interests of the estate . . . ."

94.    As an alternative to authorization of the Plaintiffs to, *inter alia*, bring preference and other avoidance actions on behalf of the estate, cause exists under § 1104(a)(1) for the appointment of a trustee to pursue preference and other avoidance actions on behalf of the estate.

95.    As an alternative to authorization of the Plaintiffs to bring preference and other avoidance actions on behalf of the estate, appointment of a trustee or to, *inter alia*, bring such actions is in the best interests of creditors and other interests of the Debtor's estate.

### Count V - The Transfers To And From The CE Settlement Trust Are Avoidable As Fraudulent Conveyances (11 U.S.C. § 548)

96.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 95 inclusive, as if fully set forth herein.

97.    Section 548(a)(1)(A) provides for avoidance of any transfer of an interest of the debtor in property incurred on or within one year before the date of the filing of the petition if the debtor voluntarily or involuntarily made such transfer with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

98.    Section 548(a)(1)(B)(i) and (B)(ii)(III) provides for the avoidance of any transfer of an interest of the debtor in property that was made or incurred on or within one year before the date of the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for such transfer and intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

99.    Section 548(a)(1)(B)(i) and (B)(ii)(I) provides for the avoidance of any transfer of an interest of the debtor in property that was made or incurred on or within one year before the date of the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for such transfer and was insolvent on the date that such transfer was made or became insolvent as a result of such transfer.

100.    The Debtor made transfers to the CE Settlement Trust within one year before the date of the filing of the petition (the "Petition Date").

101.    Plaintiffs believe and therefore aver that discovery will demonstrate that the transfers made by CE to the CE Settlement Trust were made with the actual intent to hinder,

delay or defraud, certain non-settling current asbestos personal injury creditors of CE and future asbestos personal injury creditors of CE.

102.    Plaintiffs believe and therefore aver that discovery will demonstrate that the Debtor received less than reasonably equivalent value in exchange for the transfers to the CE Settlement Trust and believed that it would incur future asbestos personal injury debts that would be beyond the debtor's ability to pay such claims as they matured.

103.    Plaintiffs believe and therefore aver that discovery will demonstrate that the Debtor received less than reasonably equivalent value in exchange for the transfers to the CE Settlement Trust and the Debtor was insolvent on the date that such transfer was made or became insolvent as a result of such transfer.

### Count VI – The Transfers To And From The CE Settlement Trust Are Avoidable As Unauthorized Post-Petition Payments  (11 U.S.C. § 549)

104.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 103 inclusive, as if fully set forth herein.

105.    Section 549 provides for avoidance of a transfer of property of the estate made after the commencement of the estate that is not authorized under this title or by the court.

106.    The payments and transfers that have been made and are being made since the Petition Date are not authorized under this title or by the court.

### Count VII - Transfers From The CE Settlement Trust Are Recoverable Against The CE Settlement Trust And Its Trustees As Initial, Immediate Or Mediate Transferees (11 U.S.C. § 550)

107.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 106 inclusive, as if fully set forth herein.

108.    Section 550 provides that the value of a transfer avoided under §§ 547, 545, 547, 548, 549, 553(b) or 724(a) may be recovered from the initial transferee or any immediate or mediate transferee of such transfers.

109.    Transfers have been made from the CE Settlement Trust at times when the Trustees knew and/or had notice that such transfers may be subject to avoidance actions.

110.    The Trustees made transfers from the CE Settlement Trust at their own risk.

111.    The transfers, to the extent they are avoided, *inter alia*, pursuant to sections 547, 548, or 549 of the Bankruptcy Code, are recoverable from the Defendants as "initial transferees" and/or "immediate or mediate transferee[s] of such initial transferee."  11 U.S.C. § 550(a)(1); (a)(2).

### Count VIII – The CE Settlement Trust And Trustees Should Be Enjoined From Making Any Further Distributions And Payments From The Trust (11 U.S.C. § 105)

112.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 111 inclusive, as if fully set forth herein.

113.    Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

114.    Plaintiffs believe and therefore aver that discovery will demonstrate that during the prepetition negotiation and solicitation process, improprieties occurred that will demonstrate that the plan as proposed by the Debtor is not eligible for confirmation, and indeed, should not be confirmed.

115.    Substantial money that represents substantial value of CE is being dissipated daily through distributions from the Trust.

116.    As a court of equity, this court should enjoin any further distribution from the CE Settlement Trust pending a review of the facts surrounding the proposal of Debtor's plan, and for all of the reasons set forth herein above.

### Count IX – CE Should Be Enjoined From Making Any Further Transfers To The CE Settlement Trust (11 U.S.C. § 105)

117.    The Plaintiffs incorporate the allegations contained in paragraphs 1 through 116 inclusive, as if fully set forth herein.

118.    Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

119.    Plaintiffs believe and therefore aver that discovery will demonstrate that during the prepetition negotiation and solicitation process, improprieties occurred that will demonstrate that the plan as proposed by the Debtor is not eligible for and should not be confirmed.

120.    As a court of equity, this court should enjoin any further transfer by CE to the CE Settlement Trust pending a review of the facts surrounding the proposal of Debtor's plan, and for all of the reasons set forth herein above.

WHEREFORE, the Plaintiffs seek entry of an order enjoining Defendants CE Settlement Trust, Haynes and Wilmington Trust from making any distributions or other payments of or from the CE Settlement Trust assets, and such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order requiring Defendants to turn over the CE Settlement Trust assets to the Debtor, and such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order requiring the Defendants to file an accounting of any and all transfers paid out of the CE Settlement Trust, and such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order authorizing Plaintiffs to pursue avoidance actions under § 547 of the Bankruptcy Code on behalf of the estate, or in the alternative for the appointment of a trustee to pursue such actions, and for such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order authorizing Plaintiffs to pursue avoidance actions under § 548 of the Bankruptcy Code on behalf of the estate, or in the alternative for the appointment of an examiner and/or trustee to pursue such actions, and for such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order authorizing Plaintiffs to pursue avoidance actions under § 549 of the Bankruptcy Code on behalf of the estate, or in the alternative for the appointment of a trustee to pursue such actions, and for such other and further relief as this Court may deem necessary and proper.

WHEREFORE, Plaintiff requests that this Court issue an order declaring that Haynes and/or Wilmington Trust are liable as initial and/or immediate or mediate transferees for any transfers avoided pursuant to other applicable sections of the Bankruptcy Code, and for such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seek entry of an order enjoining Defendants CE Settlement Trust, Haynes and Wilmington Trust from making any distributions or other payments of or from the CE Settlement Trust assets, and such other and further relief as this Court may deem necessary and proper.

WHEREFORE, the Plaintiffs seeks entry of an order enjoining Defendant CE from making any transfers to the CE Settlement Trust assets, and such other and further relief as this Court may deem necessary and proper.

Respectfully submitted,

Dated: February 27, 2003        MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By:         /s/ Noel C. Burnham
       Noel C. Burnham, Esquire (3483)
       Natalie D. Ramsey, Esquire (PA Only)
       Stephen A. Madva, Esquire (PA Only)
       Baldo M. Carnecchia, Jr., Esquire (PA Only)
       300 Delaware Avenue, Suite 750
       Wilmington, DE 19801
       (302) 504-7800
       (302) 504-7820 (facsimile)

       and

       123 South Broad Street
       Philadelphia, PA 19109
       (215) 772-1500
       (215) 772-7620 (facsimile)

Of Counsel

Elizabeth Wall Magner, Esquire
1100 Poydras Street
Suite 1806, Energy Centre
New Orleans, Louisiana 70163-1806
504/599-8650
504/599-8660 (facsimile)                    Attorneys for the Pre-Petition Committee Of
                                             Select Asbestos Claimants


                                             and


                                             _____/s/ Dean A. Hanley_____
                                             Dean A. Hanley, Esquire
                                             Paul, Hanley & Harley, LLP
                                             1608 Fourth Street, Suite 300
                                             Berkeley, California 94710
                                             Telephone: (510) 559-9980
                                             Facsimile: (510) 559-9970

                                             Counsel for Defendant Victor Trinchese